DESERT EQUITIES, INC., Plaintiff
Below, Appellant,

v.

MORGAN STANLEY LEVERAGED EQ-
UITY FUND, II, L.P.; Morgan Stanley
Leveraged Equity Fund, II, Inc.; and
Morgan Stanley Group, Inc., Defen-
dants Below, Appellee.

Supreme Court of Delaware.

Submitted: Jan. 20, 1993.
Decided: June 1, 1993.

Joanne Zack, pro hac vice (argued), and Harold E. Kohn, of counsel, of Kohn, Nast & Graf, Philadelphia; Elwood S. Kendrick, of counsel, Los Angeles, CA; and Joseph A. Rosenthal of Rosenthal, Monhait, Gross & Goddess, Wilmington, for appellant.

A. Gilchrist Sparks, III (argued), and David G. Thunhorst of Morris, Nichols, Arsht & Tunnell, Wilmington; and Lewis A. Kaplan, Allan J. Arffa and John N. Gevertz of Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for appellees.

Before HORSEY, WALSH and HOLLAND, JJ.

HORSEY, Justice:

The underlying issue of this appeal is whether plaintiff has pled a claim for relief sufficient to preclude dismissal of the complaint on the pleadings. The action involves a dispute between a limited partner plaintiff and a general partner defendant over their respective rights under a partnership agreement. The Court of Chancery found that plaintiff's allegations were conclusory and insufficient as a matter of law to state a claim for relief against defendant. Plaintiff appeals the court's grant of defendants' motion for judgment on the pleadings under Court of Chancery Rule 12(c), filed after answer. We find the grant of judgment on the pleadings erroneous as a matter of law and we reverse.

I

Desert Equities, Inc. ("Desert Equities" or "plaintiff") is a Nevada corporation whose principal place of business is in California.[1] In October 1987, Desert Equities became a limited partner of defendant Morgan Stanley Leveraged Equity Fund II, L.P. ("Fund II"), a Delaware limited partnership. The remaining defendants are the general partner of Fund II, Morgan Stanley Leveraged Equity Fund II, Inc. ("General Partner"), which is a wholly-owned subsidiary of defendant Morgan Stanley Group, Inc. ("Morgan Stanley Group").[2] The parties' dispute in the Fund II partnership stems from litigation arising from Desert Equities' earlier participation as a limited partner in Morgan Stanley Leveraged Equity Fund, L.P. ("Fund I").

As with Fund I, Fund II was formed primarily to identify potential leveraged buy-out ("LBO") investment opportunities and to acquire, hold and dispose of such LBO investments. The Morgan Stanley Leveraged Equity Fund II Partnership Agreement (the "Partnership Agreement") vests management and control of Fund II, including the choice of Fund II investments, in the General Partner. In 1987 Desert Equities became a limited partner of Fund II by making a capital commitment of $5 million. The limited partners of Fund II are periodically required to make capital contributions to Fund II to fund the investments chosen by the General Partner. These capital contributions are made on a *pro rata* basis depending on each limited partner's capital commitment as compared to the capital commitments of the other

---

1. The facts are taken entirely from the pleadings and, in the context of the present motion, must be viewed in a light most favorable to plaintiff, the non-moving party. *See infra* section III–A.

2. Both corporate defendants, the General Partner and the Morgan Stanley Group, are Delaware corporations whose principal place of business is New York City.

limited partners. Thereafter, Desert Equities made total capital contributions of approximately $2,083,000 to Fund II for eleven separate LBO investments.

This suit poses the question of the breadth of authority conferred on the General Partner to excuse a limited partner, such as Desert Equities, from further participation in Fund II investment opportunities. As noted, the suit is directly related to an earlier filed suit by Desert Equities against affiliates of the Morgan Stanley Group, among others.[3]

Following Desert Equities' institution of the Fund I suit in June 1990, the General Partner of Fund II, on July 15, 1991, notified Desert Equities that, in the exercise of the General Partner's authority conferred by section 5.04 of the Partnership Agreement, Desert Equities was "excused" from further participation in at least three new Fund II investments. The General Partner's letter stated, in pertinent part:

> The General Partner believes, pursuant to Section 5.04 of the Partnership Agreement, that it is in a position to excuse Desert Equities from participating in an imminent investment since your participation might have a material adverse effect, directly or indirectly, on the investment, the [Fund II] Partnership or Morgan Stanley.

**3.** In June 1990, Desert Equities and another Fund I limited partner filed suit in New York State court against Fund I, its general partners, Morgan Stanley Group and others. That suit (the "Fund I suit") challenges Fund I's liquidation of its leveraged buy-out investments in Container Corporation of America and Silgan Corporation. In the Fund I suit, Desert Equities charged defendants' affiliates with breach of fiduciary duty and self-dealing. The suit was later dismissed by the New York court on *forum non conveniens* grounds. Desert Equities subsequently reinstituted the Fund I suit in the Delaware Court of Chancery, where it remains pending.

**4.** Section 5.04(b) of the Partnership Agreement provides:

(b) A Limited Partner shall be excused and shall not be permitted to make all or a portion of any required Capital Contribution with respect to any LBO Investment if the General Partner delivers a written notice to such Limited Partner that the making of such Capital Contribution or portion thereof might have a Material Adverse Effect. Any Capital Contribution

## Proceedings Below

On February 18, 1992, Desert Equities filed in the Court of Chancery this suit (the "Fund II suit") for breach of contract for wrongfully excluding plaintiff from participating in Fund II investments. Additionally, Desert Equities charges defendants with breach of fiduciary duty and breach of an implied covenant of good faith and fair dealing. The crux of plaintiff's complaint is that the General Partner acted with bad faith in exercising its excusal authority to exclude Desert Equities from further participation in Fund II. Plaintiff asserts that the General Partner did so in retaliation for Desert Equities' filing of the Fund I suit. Plaintiff seeks specific performance, damages, an accounting and injunctive relief.

The claims raised by the complaint relate to the extent of the rights conferred on the General Partner under section 5.04(b) of the Partnership Agreement and limitations, express or implicit, on the General Partner's exercise of its excusal authority. Section 5.04(b) enumerates the circumstances under which the General Partner may preclude a limited partner, such as Desert Equities, from further participation in the venture if "the making of such Capital Contributions ... might have a Material Adverse Effect."[4]

by a Limited Partner might have a "Material Adverse Effect" if:

(i) the General Partner, in its discretion, determines that (x) such Capital Contribution or portion thereof is likely, when taken by itself or together with other Capital Contributions of such Partner or any other Partners,

(A) to result in a violation of any law or regulation of the United States of America or any State thereof or of any foreign country (other than any such foreign law or regulation that violates, or the compliance with which by Persons subject to the jurisdiction of the United States of America would violate, any law or regulation of the United States of America) (and the General Partner shall have received written opinion of counsel to such effect), or

(B) *to subject the Person that is, directly or indirectly, the subject of such proposed LBO Investment or the Partnership to any regulatory or other legal requirements to which it would not otherwise have been subject and compliance with which is materially burdensome or materially increased the burden of*

Defendants' answer essentially denies the bulk of plaintiff's allegations and asserts several affirmative defenses, including failure of the complaint to state a claim for relief. Defendants simultaneously moved for judgment on the pleadings under Court of Chancery Rule 12(c) and to stay all discovery pending disposition of the 12(c) motion, a motion plaintiff did not contest.[5] The Court of Chancery, by unreported memorandum opinion dated July 28, 1992, granted judgment on the pleadings in favor of the defendants.

### Rulings Below

The court found insufficient as a matter of law Desert Equities' allegations challenging the General Partner's motives in exercising its excusal authority. More specifically, the court found legally insufficient Desert Equities' allegations that the General Partner did not in good faith *believe* that Desert Equities' participation in the Fund I litigation "would have a material adverse effect on the entities" participating in the Fund II investments. *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, Del.Ch., No. 12449, Chandler, V.C., slip op. at 7, 1992 WL 181718 (July 28, 1992) (*"Desert Equities I"*).[6] On this pivotal finding, the court held *as a matter of law* that it could not "construe as unreasonable the General Partner's [purported] belief that plaintiff's further participation in Fund II investments would have a material adverse effect on the entities" involved in Fund II and Morgan Stanley. *Id.* at 7. The court so held, notwithstanding an earlier threshold ruling (adverse to defendant's contentions) that the General Partner's power of excusal under section 5.04(b) must be construed as qualified, rather than absolute, and subject to a finding (by the court) that the General Partner has "exercise[d] its discretion in a reasonable fashion." *Id.*, slip op. at 5.

## II

### The Parties' Contentions on Appeal

Desert Equities concedes that the trial court articulated the proper standard controlling its review of a motion for judgment on the pleadings and that the court's threshold ruling was correct as a matter of law. Defendants disagree that the General

complying with such regulatory or other legal requirements beyond what it would otherwise have been (and the General Partner shall have received a written opinion of counsel as to the applicability of such regulatory or other legal requirements),

and (y) in either case, such result should be avoided; or

(ii) the General Partner determines, in its discretion, that such Limited Partner should not participate in such LBO Investment because

(x) participation by such Limited Partner in such LBO Investment is likely to subject such Limited Partner to materially adverse consequences as a result of applicable law, regulation or other similar requirement (including the Foreign Investment in Real Property Tax Act of 1980, as amended) and such Limited Partner agrees to become an Excused Partner with respect to such LBO Investment pursuant to this clause (x), or

(y) either (A) such Limited Partner has, after being admitted to the Partnership, been convicted in a criminal proceeding (excluding misdemeanors), or was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting activities subject to, securities laws of the United States of America or any State thereof or of any for-

eign country or was or is subject to a finding as to any violation of such laws, in each case in a civil proceeding of a judicial or administrative body or (B) participation by such Limited Partner is such LBO Investment would otherwise have a material adverse effect on the Person that is, directly or indirectly, the subject of the proposed LBO Investment, the Partnership or Morgan Stanley.

The General Partner shall not be liable to any Limited Partner, the Partnership or any other Person for any failure to permit or require a Limited Partner to be excused from making all or a portion of any required Capital Contribution pursuant to this Section 5.04(b).

5. Plaintiff explained its failure to contest the motion to stay as follows: "Based upon numerous precedents, plaintiff did not contest this motion for a stay, pending the resolution of defendants' dispositive pleading motion."

6. Desert Equities' averments as to the General Partner's belief are found in paragraph 17 of the Complaint, which states: "[T]he General Partner has willfully, wrongfully and in bad faith excluded plaintiff from participating in three or more Fund II investments in retaliation for plaintiff's lawsuit against various Morgan defendants."

Partner's conferred right of excusal of plaintiff from Fund II investments under section 5.04(b) was not unfettered and they contest the court's ruling that defendant's right of refusal must be read as subject to defendant's exercise of its excusal right in a reasonable manner.

Desert Equities contends that the court committed procedural and substantive error in finding its claims against defendants for breach of contract and breach of fiduciary duty to have been inadequately pleaded. The court committed procedural error, plaintiff contends, in misapplying its review standard by drawing from the pleadings impermissible inferences of fact favorable to defendants, the moving parties, rather than to plaintiff, the non-movant. Plaintiff also contends that the court committed substantive or legal error in alternative respects: one, the court erred in ruling that the complaint failed to plead a claim for relief against the General Partner, either for breach of contract or breach of fiduciary duty for exercising its excusal authority in bad faith or in an unreasonable manner; and two, the court committed legal error in ruling, in the context of a Rule 12(c) motion, that defendants must be found to have acted "reasonably" as a matter of law in terminating plaintiff's further participation in the Fund II investments for the reasons stated by the General Partner in its July 15th letter. Plaintiff contends that error lies in the court's: 1) disregard of Desert Equities' well-pleaded allegations charging the defendant General Partner with bad faith and retaliatory intent in exercising its excusal authority as defined under section 5.04(b); and 2) its reaching of "ultimate" findings of fact that were premature in failing to afford plaintiff a fair opportunity to discover and to present evidence in support of its allegations of defendants' wrongdoing.

Defendants disagree, contending that the court was correct in all of its rulings other than its threshold ruling, which defendants contend was erroneous as a matter of law. Defendants assert that section 5.04(b) must be construed as granting the General Partner an *unfettered* discretion to exclude limited partners from investment opportunities, but that the court otherwise reached the right result.

### Standard and Scope of Review

 Our scope of review of the grant of a motion for judgment on the pleadings, which has not been converted into a summary judgment motion, is limited to a review of the contents of the pleadings. *See Sellers v. M.C. Floor Crafters, Inc.,* 2nd Cir., 842 F.2d 639, 642 (1988); *Republic Steel Corp. v. Pennsylvania Engineering Corp.,* 7th Cir., 785 F.2d 174, 177 n. 2 (1986). Our standard of review is to determine whether the court committed legal error in formulating or applying legal precepts. *See, e.g., Levinson v. First Delaware Ins. Co.,* Del.Supr., 549 A.2d 296, 298 (1988); *Rohner v. Niemann,* Del.Supr., 380 A.2d 549 (1977). Accordingly, our review of the trial court's grant of a motion for judgment on the pleadings presents a question of law, which we review *de novo. See Fiduciary Trust Co. v. Fiduciary Trust Co.,* Del.Supr., 445 A.2d 927, 936 (1982).

### III

### A

We turn to Desert Equities' first contention that the Court of Chancery, in ruling on defendants' motion for judgment on the pleadings, failed to apply the standard of review which the court earlier had properly found to be controlling.[7] Desert Equities

---

7. The trial court defined its standard of review as follows:

> In deciding a motion for judgment on the pleadings, a court accepts as true the non-movant's well pleaded factual allegations and grants the non-movant the benefit of any inferences that one may fairly draw from the allegations. *Warner Communications, Inc. v. Chris-Craft Indus., Inc.,* Del.Ch., 583 A.2d 962,

965 (1989) [, *aff'd without opinion,* Del.Supr., 567 A.2d 419 (1989) ]. A court may grant a motion for judgment on the pleadings where there is no material fact in dispute and the moving party is entitled to judgment as a matter of law. *Id.* That is, a court should not grant such a motion unless it appears to a reasonable certainty that the non-movant would not be entitled to relief for its claims

asserts that the court, rather than applying its articulated standard, disregarded the complaint's well-pleaded, albeit conclusory, allegations that "the General Partner has *willfully, wrongfully* and *in bad faith* excluded plaintiff from participating in three or more Fund II investments *in retaliation* for plaintiff's lawsuit ..." (emphasis added). Defendants disagree that the court misapplied its standard. Thus, we focus on the correctness of the trial court's conclusion that:

> [Desert Equities'] conclusory allegation, as a matter of law, does not adequately allege that the General Partner, in fact, did not believe that the litigation would have a material adverse effect on the entities who were the subject of the investments, Fund II and Morgan Stanley.

*Desert Equities I,* slip op. at 6–7. For the reasons which follow, we find the court's ruling to be erroneous as a matter of law.

 In determining a motion under Court of Chancery Rule 12(c) for judgment on the pleadings,[8] a trial court is required to view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party. *See Warner Communications, Inc. v.*

*Chris–Craft Indus., Inc.,* Del.Super., 583 A.2d 962, 965, *aff'd without opinion,* Del. Supr., 567 A.2d 419 (1989); *see also Institute for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc.,* 3rd Cir., 931 F.2d 1002, 1004, *cert. denied,* — U.S. ——, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991); *Revis v. Slocomb Indus., Inc.,* D.Del., 765 F.Supp. 1212, 1213 (1991); 5A Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 1368 at 519 (1990).[9] The court must take the well-pleaded facts alleged in the complaint as admitted. *See Revis,* 765 F.Supp. at 1213; 5A Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 1368 at 523; *see also Spence v. Funk,* Del.Supr., 396 A.2d 967, 968 (1978) (citation omitted) (motion to dismiss). A motion for judgment on the pleadings may be granted only when no material issue of fact exists and the movant is entitled to judgment as a matter of law. *See Warner Communications,* 583 A.2d at 965; *Fagnani v. Integrity Fin. Corp.,* Del.Super., 167 A.2d 67, 75 (1960); 5A Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 1368 at 518.[10]

 We find the trial court's determination to grant judgment on the pleadings for defendants to be contrary to prevailing

---

> under any set of facts that could be proven in support of its allegations. *See id.* *Desert Equities I,* slip op. at 2).

8. Court of Chancery Rule 12(c) provides, in pertinent part:

> **(c) Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.

Court of Chancery Rule 12(c) is identical with Federal Rule of Civil Procedure 12(c). Since our Court of Chancery rule is modeled after the federal rule, we look to federal decisional law in construing the Court of Chancery rule. *See Canaday v. Superior Court,* Del.Supr., 119 A.2d 347, 352 (1955).

9. Wright & Miller find that courts generally apply the same standard of review to motions for judgment on the pleadings and summary judgment. *See* 5A Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 1369 at 534–35. When considering a motion for summary judgment, Delaware courts view the evidence in a light most favorable to the non-moving party. *See Merrill v. Crothall–American, Inc.,* Del.Supr., 606 A.2d 96, 99–100 (1992); *Baylis v. Wilmington Medical Ctr., Inc.,* Del.Supr., 477 A.2d 1051,

1057 (1984); *see also Barker v. Huang,* Del. Supr., 610 A.2d 1341 (1992). Accordingly, the summary judgment standard provides guidance to courts reviewing motions for judgment on the pleadings.

10. The federal court standard for determining a motion for judgment on the pleadings was recently summarized by our Federal District Court in the following manner:

> "In evaluating a Rule 12(c) motion, the court must view the pleadings in the light most favorable to, and draw all inferences in favor of, the non-moving party.... The court must take the 'well-pleaded facts, alleged in the complaint as ... admitted,' ... and may not dismiss the complaint 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Madonna v. U.S.,* 878 F.2d 62, 65 (2d Cir.1989) (citations omitted). The court may "grant the motion only if the moving party establishes that no material issue of fact remains and that it is entitled to judgment as a matter of law." *Shelly v. Johns–Manville Corp.,* 798 F.2d 93, 97 n. 4 (3d Cir.1986). *Revis,* 765 F.Supp. at 1213.

Rule 12(c) law under Delaware as well as federal authorities. By its complaint, Desert Equities alleges that the General Partner excluded it from participating in the investments in "bad faith" and "in retaliation for" the Fund I lawsuit. Defendants, though denying these allegations by Answer, must, by moving for judgment on the pleadings, concede all well-pleaded allegations to be true, as must the trial court in reviewing a Rule 12(c) motion. The question turns on whether plaintiff's allegations are, without more, sufficient to withstand a Rule 12(c) motion. We think they are, and that the trial court erred in concluding otherwise.

The complaint alleges that the General Partner acted in bad faith and in a retaliatory manner. On this issue the court wrote that "just because the excusals took place after the institution of the initial Fund I lawsuit, it does not necessarily follow that the excusals were in retaliation for the lawsuit." *Desert Equities I*, slip op. at 6. For purposes of determining defendants' Rule 12(c) motion, the trial court was required to accept as true the allegations that the General Partner had acted in bad faith and in a retaliatory manner or, at the very least, was required to infer such from the allegations in the complaint. *See Warner Communications*, 583 A.2d at 965; *see also Merrill*, 606 A.2d at 99–100. Whether plaintiff Desert Equities is able to prove that the General Partner exercised its discretion in an unreasonable manner or in the exercise of bad faith is for another day. While ultimately on an enlarged record such a finding may be made, it was premature and speculative for the trial court to base its grant of judgment on the pleadings on the reasoning employed. We hold that the Court of Chancery erred as a matter of law in granting judgment on a complaint which contains facts which support a claim which may entitle Desert Equities to relief. *See, e.g., Revis*, 765 F.Supp. at 1215.

### B

■ We also find the trial court to have erred when, based upon its finding that the

General Partner reasonably excluded Desert Equities from further Fund II investments, it granted judgment on the pleadings. Desert Equities contends that the reasonableness of the General Partner's beliefs, as well as the reasonableness of its exercise of its contractual rights, is not a question of law but a question of fact which cannot be resolved on the pleadings. Defendants counter that the trial court properly found Desert Equities to have alleged insufficient facts to support a finding that the General Partner's belief was unreasonable. We conclude that the issue of whether the General Partner's decision to exclude plaintiff from further participation in Fund II investments was "reasonable" is a mixed question of fact and law which cannot be resolved on a motion for judgment on the pleadings.

The Court of Chancery determined that, while section 5.04(b) of the Partnership Agreement[11] provides the General Partner discretionary authority to exclude a limited partner from participation in an investment when participation would have a materially adverse effect, the General Partner is obliged to exercise that discretion in a *reasonable* manner. Reasonableness is a question of fact to be determined by the finder of fact. *J.A. Jones Construction Co. v. Dover*, Del.Super., 372 A.2d 540, 547 (1977), *appeal dismissed*, Del.Supr., 377 A.2d 1 (1977). In *Jones*, the Superior Court held that it was for the finder of fact to determine [on a fuller record] whether a construction delay was reasonable. *Id.*

■ As previously noted, a motion for judgment on the pleadings cannot be granted when a material question of fact exists. *See Warner Communications*, 583 A.2d at 965. In the case before us, the trial court determined, without the benefit of discovery or testimony, that the General Partner acted in a reasonable manner. Thus, contrary to the prevailing case law, the Court of Chancery improperly decided a

---

**11.** *See supra* note 3.

factual question when deciding a motion for judgment on the pleadings.[12]

Desert Equities alleges that the defendants breached their implied covenant of good faith and fair dealing when they, in bad faith, breached the Partnership Agreement. Since all inferences are to be drawn in the light most favorable to the non-movant,[13] the trial court is required to draw the inference that the General Partner acted unreasonably when it excused Desert Equities from participating in the Fund II investments. The reasonableness of the General Partner's action is a factual matter and cannot be decided in a motion for judgment on the pleadings. Since there has been no discovery in this case, there are no facts of record from which the Court of Chancery may discern the reasonableness of the General Partner's actions. Therefore, because reasonableness is a question of fact, the Court of Chancery erred when it found, as a matter of law, that defendants acted reasonably in their dealings with Desert Equities.

### C

While these findings require reversal and could end our analysis, we briefly address, in the interests of justice and judicial economy, defendants' principal argument on the merits for sustaining the trial court's grant of judgment on the pleadings. Defendants state that the requirements for pleading an actionable claim of "bad faith" do not differ from the pleading requirements for stating a claim of "fraud" under Court of Chancery Rule 9(b). In effect, defendants assert that plaintiff's allegations of bad faith should be treated as a claim of fraud. Defendants argue that the pleading requirements for sustaining a claim of bad faith or claim of fraud are the same. They assert that the Court of Chancery's grant of judgment on the pleadings was "correct" because plaintiff failed to plead facts with sufficient specificity to support its allegations of bad faith. Desert Equities responds that a claim of "bad faith" is not identical to a claim of "fraud," and contends that bad faith need not be pled with particularity.[14] Defendants' argument that an allegation of bad faith must be pled with particularity is legally flawed, for the reasons which follow.

■■■ Generally, the Court of Chancery rules of procedure, which adopt the philosophy of "notice pleading," do not require a plaintiff to plead a claim with particularity. *See generally* Ct.Ch.R. 8; Hon. Daniel L. Herrmann, *The New Rules of Procedure in Delaware*, 18 F.R.D. 327, 339 (1956) (particularized pleading is abolished in favor of general pleading). Due to the unique nature of a fraud claim, the drafters of the rules decided that notice pleading would not apply to fraud. Accordingly, Chancery Court Rule 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

**12.** Defendants' reliance on *Levine v. Smith,* Del. Supr., 591 A.2d 194 (1991), is misplaced since in that case the motion to dismiss was granted under Court of Chancery Rule 23.1, a rule which requires plaintiffs to plead their cause of action with particularity. Under the tenets of notice pleading it is unnecessary to plead a claim such as this with particularity. *See* Ct. Ch.R. 8; *Rabkin v. Philip A. Hunt Chem. Corp.,* Del.Supr., 498 A.2d 1099, 1104 (1985); Hon. Daniel L. Herrmann, *The New Rules of Procedure in Delaware,* 18 F.R.D. 327, 339 (1956). In *Levine,* after noting that Rule 23.1 is "a 'marked departure from the "notice" pleading philosophy,'" we affirmed the dismissal because the plaintiffs only made conclusory, unsupported allegations of defendants' conduct. *Levine,* 591 A.2d at 207 (quoting *Grobow v. Perot,* Del.Supr., 539 A.2d 180, 187 n. 6 (1988) (citations omit-

ted)). *Levine* is not helpful in this case since Desert Equities cause of action need not be pled with particularity and any ruling which so requires is error. *See infra* section III(C).

**13.** *See supra* section III(A).

**14.** Here Desert Equities specifically argues that it was:

> not necessary for plaintiff to allege or prove the bad faith of the General Partner to prevail on plaintiff's breach of contract and breach of fiduciary duty claims. The issue on those claims is whether the General Partner has the right under the Partnership Agreement to exclude plaintiff from Fund II investments solely because plaintiff brought a lawsuit involving Fund I.

Del.Ct. of Ch.Rules 9(b).[15] To require that fraud be pleaded with particularity "serves to discourage the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude". *U.S. ex rel Joseph v. Cannon*, D.C.Cir., 642 F.2d 1373, 1385 (1981), *cert. denied*, 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982) (footnotes omitted).

■■■■■■ Intent and state of mind, on the other hand, may be averred generally because "any attempt to require specificity in pleading a condition of mind would be unworkable and undesirable." 5 Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1301 at 674. The underlying rationale for requiring a claim of fraud to be pleaded with particularity does not apply to an allegation of bad faith which relates to state of mind. The essential elements of a claim of fraud are materially different from those required to establish a tortious state of mind.[16] While a claim of fraud has five components, *see Stephenson v. Capano Dev., Inc.*, Del.Supr., 462 A.2d 1069, 1074 (1983),[17] a claim of bad faith hinges on a party's tortious state of mind. Under Rule 9(b), state of mind may be pled generally. That is because it may be virtually impossible for a party plaintiff to sufficiently and adequately describe the defendant's state of mind at the pleadings stage. 5 Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1301 at 674. Therefore, we hold that Desert Equities is not

required to plead bad faith with particularity.

■■■■■■ The Court of Chancery, in holding otherwise, focused predominantly on Desert Equities' allegation of "retaliation" and largely ignored the sufficiency of its allegations of "bad faith." Those allegations were:

> [that] the General Partner has willfully, wrongfully and in bad faith excluded plaintiff from participating in three or more Fund II investments in retaliation for plaintiff's lawsuit against various Morgan defendants.

Desert Equities' Complaint at 5, *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, Del.Super., No. 12449 (Feb. 18, 1992). Additionally, the complaint alleges:

> The General Partner has breached this implied covenant by reason of its wrongful exclusion of plaintiff from three or more investments of Fund II and its bad faith, retaliatory assertion that plaintiff's litigation concerning Fund I is a 'Material Adverse Effect' under Section 5.04 of the Partnership Agreement.

*Id.* at 9. We find these allegations sufficient to plead a claim for bad faith under the Court of Chancery Rules.

■■■■■■ In any event, a fairly pleaded claim of good faith/bad faith raises essentially a question of fact which generally cannot be resolved on the pleadings or without first granting an adequate opportunity for discovery. *See Lewis v. Fuqua*,

---

**15.** Court of Chancery Rule 9(b) is identical to Federal Rule of Civil Procedure 9(b).

**16.** We also note that the definition of "fraud" is distinct from that of "bad faith." In the legal sense, "fraud" is defined as:

> An intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right.

*Black's Law Dictionary* 337 (5th ed. 1983). Conversely, when discussing "bad faith," the same authority wrote:

> [The] term "bad faith" is not simply bad judgement or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence

in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

*Id.* at 72.

**17.** These elements are:

 1) a false representation, usually one of fact, made by the defendant;

 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

 3) an intent to induce the plaintiff to act or to refrain from acting;

 4) the plaintiff's action or inaction taken in justifiable reliance upon the presentation; and

 5) damage to the plaintiff as a result of such reliance.

*Stephenson v. Capano Dev., Inc.*, Del.Supr., 462 A.2d 1069, 1074 (1983).

Del.Ch., 502 A.2d 962, 971 (1985) (defendants' good faith is a question of fact). In *Lewis*, the court, denying a motion to dismiss, concluded that dismissal was inappropriate unless one assumed that the defendant's actions had been reasonable but the plaintiff had not been afforded an opportunity to conduct discovery to develop the record on the issue. *Id.* Because Desert Equities alleges that the defendants in fact acted in bad faith, the trial court acted prematurely in so ruling before any facts had been established through discovery. Since bad faith is an issue of fact, the issue cannot be resolved on pleadings which, on their face, allege bad faith.[18]

\* \* \* \* \* \*

In summary, we find the Court of Chancery to have committed legal error when it granted defendants' motion for judgment on the pleadings. As to the allegations of bad faith and retaliation, there exist material issues of fact which must be resolved. Therefore, the defendants were not entitled to judgment as a matter of law. Desert Equities must be provided an opportunity to develop the merits of its claims through discovery. To permit the dismissal of the complaint to stand would deny Desert Equities an opportunity to have a full and fair hearing of its claims on the merits.

\* \* \*

The judgment below is REVERSED and the case is REMANDED for proceedings consistent herewith.

---

18. *See supra* section III(B).