STATE of Delaware, ex rel. M. Jane
BRADY, Attorney General, State
of Delaware Plaintiff,

v.

PUBLISHERS CLEARING HOUSE, a
New York limited partnership, Dorothy Addeo, Daniel P. Doyle, and David
C. Sayer Defendants.

C.A. No. 17756.

Court of Chancery of Delaware,
New Castle County.

Submitted: Feb. 23, 2001.

Decided: April 19, 2001.

Olha N.M. Rybakoff (argued) and Michael A. Undorf, Deputy Attorneys General, Fraud and Consumer Protection Division, Department of Justice, State of Delaware, for Plaintiff.

Michael D. Goldman, W. Harding Drane, Jr. (argued), Stephen C. Norman, and Kevin R. Shannon, Potter Anderson & Corroon LLP, Wilmington, Delaware, for Defendants.

## OPINION

LAMB, Vice Chancellor.

### I. INTRODUCTION

The State of Delaware, *ex rel.* Attorney General M. Jane Brady, ("State") has brought this action against Publishers Clearing House ("PCH") and three of its employees. According to the State, defendants mailed deceiving and misleading sweepstakes solicitations to Delaware residents in contravention of the Delaware Consumer Fraud Act ("CFA")[1] and the Delaware Uniform Deceptive Trade Practices Act ("UDTPA").[2] The State seeks preliminary and permanent injunctive relief, restitution and/or damages, disgorgement of profits realized by the prohibited conduct, and civil penalties. Defendants have moved to dismiss under Court of Chancery Rule 9(b), arguing that plaintiff's complaint fails to aver fraud with the requisite particularity. The questions before the court are quite narrow: 1) whether CFA and UDTPA are subject to the standards of pleading with particularity under Court of Chancery Rule 9(b), and 2) if so, whether the State has satisfied this standard of particularity. For the reasons below, I conclude that claims by the State under the CFA and UDPTA are not subject to Rule 9(b)'s requirements of particularity. Therefore the motion to dismiss the complaint will be denied.

### II. BACKGROUND

The State of Delaware brought this action against PCH, a New York Limited Partnership, and three employees of PCH, Dorothy Addeo, David C. Sayer, and Daniel P. Doyle, residents of the State of New York. PCH is in the business of marketing magazine subscriptions and other merchandise by way of direct mail solicitation. In connection with this, PCH conducts a nationwide promotional sweepstakes. Since January 31, 1997, PCH is alleged to have sent approximately 100 million mailings regarding this sweepstakes to consumers throughout the United States. This case arises out of the 750,000 sweepstakes mailings that the State alleges were sent to consumers within Delaware during that same period.

In its complaint, the State alleges that PCH's sweepstakes mailings violated the CFA on at least 750,000 separate occasions. The State lists 18 acts it believes constituted violations of the CFA, 6 *Del. C.* § 2513.[3] The State also alleges 750,000

---

1. 6 *Del. C.* §§ 2511—2527.

2. 6 *Del. C.* §§ 2531—2536. The State has also brought a third claim alleging that elderly and disabled customers were targeted by PCH's sweepstakes solicitations.

3. These include:
   1) Misrepresenting, directly or by implication, that consumers have won or that there is a significant likelihood that they will win a substantial prize in the sweepstakes, through the use of, but not limited to, the following statements [examples omitted];

   2) Misrepresenting the amount or size of the prize to be awarded to winning consumers;

   3) Misrepresenting directly or by implication, that consumers will improve their chances of winning a prize in the PCH sweepstakes by ordering magazines or merchandise offered by PCH;

   4) Prescribing an entry method for consumers who do not order magazines or merchandise that is not clearly stated and is significantly more cumbersome than the entry methods for consumers who order;

violations of the UDTPA.[4]  In addition, the complaint quotes nine statements in mail-

5) Misrepresenting, directly or by implication, that absolute deadlines exist for responding to Defendant's sweepstakes promotion offers, and thereby creating a false sense of urgency that leads consumers to believe that they must return their entries within a short amount of time or forfeit their chances of winning a prize;

6) Misrepresenting, directly or by implication, that officials at PCH have a personal relationship with and stake in the consumers' winning a prize from defendants, by use of letters, memoranda and cards signed by PCH representatives that appear to be personalized, in order to establish a relationship of trust between Defendant and consumers;

7) Misrepresenting, directly or by implication, that the PCH sweepstakes promotion offers are endorsed, ratified, or legalized by the United States of America or a governmental agency by, *inter alia:*

   i) Using official looking emblems that resemble a government agency;

   ii) Using envelopes that resemble official government mailings;

   iii) Using warning notices that cite the possibility of government action, or that cite government codes or form numbers, where the U.S. Postal Service does not require the use of codes or form numbers; and/or

   iv) Using forms that resemble those available from the U.S. Postal Service to send official certified mail.

8) Misrepresenting, directly or by implication, that the defendants' sweepstakes promotion offers are delivered by means other than bulk mail, including but not limited to: by first class mail, express mail, certified mail, priority mail, express carrier, overnight delivery, special delivery, hand delivery and airmail;

9) Misrepresenting consumers' odds of winning [the complaint incorporates 16 attached exhibits];

10) Misrepresenting, directly or by implication, through television advertising and the use of devices such as a "green star" on mailings, and Presidents Gold Club Memberships, that a sweepstakes recipient is a member of a select or limited group with a more favorable chance of winning a large cash prize in a sweepstakes;

11) Misrepresenting, directly or by implication, that consumers have a greater likelihood of winning or are close to winning a large cash prize through the use of simulated checks, vouchers, and IRS Form 1099;

12) Misrepresenting, directly or by implication, that a consumer is about to win a large cash prize through the use of correspondence from Farmers State Bank. This correspondence is entitled "Notice of Monetary Transfer;"

13) Failing to state or conspicuously disclose the odds each consumer has of being awarded each prize;

14) Failing to state or conspicuously disclose the odds for each prize in immediate proximity on the same page with the first listing of each prize;

15) Failing to state or conspicuously disclose the odds for each prize in type at least as large as the typeface used in the standard text of the offer;

16) Failing to state or conspicuously disclose the restrictions or qualifications attached to the prize receipt on the offer in immediate proximity on the same page with the first listing of the prize;

17) Failing to place in the offer, a statement, printed in direct proximity to the prize or prizes awarded in type at least as large as the typeface used in the standard text of the offer, an indication that major restrictions may apply to the use, availability, or receipt of the prize(s) awarded; and

18) Using simulated checks in its sweepstakes promotion offers which do not disclose or otherwise bear an indication that the same is not a check, through the use of the phrase "THIS IS NOT A CHECK" or some similar designation, conspicuously printed in type at least as large as the predominant typeface in the simulated check or the front of the check itself.

4. The State alleges that defendants' acts and practices are unfair and deceptive in that:

1) they cause or may cause a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods and services, in violation of 6 *Del. C.* § 2532(2);

ings sent into Delaware as examples of unlawful conduct, and attaches and incorporates by reference 16 separate exhibits displaying copies of some of the allegedly unlawful mailings.

The complaint also alleges that PCH targeted vulnerable consumers by repeatedly mailing sweepstakes materials to the elderly and "consumers with diminished or poor reading, cognitive or comprehension or logic skills, or poor vision." Therefore, the State requests enhanced penalties pursuant to 6 *Del. C.* § 2581.

In its prayer for relief, the State seeks both preliminary and permanent injunctions against PCH and related persons from mailing sweepstakes materials into Delaware, restitution, disgorgement of profits, civil penalties up to $10,000 for each violation of the CFA and the UDTPA, enhanced penalties of up to $10,000 for each violation of targeting the elderly and/or disabled, costs, attorney's fees, and interest.

PCH and its three employees (collectively, hereinafter, "PCH") responded by filing a motion to dismiss under Court of Chancery Rule 9(b). PCH argues that the claims by the State under CFA and the UDTPA are subject to Rule 9(b), and that

2) they cause or may cause a likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another, in violation of 6 *Del. C.* § 2532(3);
3) they represent that their goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have, in violation of 6 *Del. C.* § 2532(5);
4) they advertise their goods or services with the intent not to sell them as advertised, in violation of 6 *Del. C.* § 2532(10); and
5) they engage in conduct that similarly creates a likelihood of confusion or misun-

the State has failed to satisfy its required standard of particularity.

## III. LEGAL ANALYSIS

Court of Chancery Rule 9(b) states in pertinent part, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." PCH argues that Rule 9(b) is not limited to common law fraud, but includes all fraud actions, including "statutory fraud" actions brought under the CFA and the UDTPA. Citing to *Rinaldi v. Iomega Corp.*[5] and *J.E. Rhoads v. Ammeraal, Inc.*,[6] PCH argues, "Delaware Courts have held that the particularity requirements of Rule 9(b) govern all allegations of fraud, including claims asserted under the CFA and the [U]DTPA."

The State responds that the word "fraud" in the Consumer Fraud Act and the word "deceptive" in the Uniform Deceptive Trade Practices Act are merely descriptive terms and do not import into claims brought under those acts the elements of common law fraud.[7] The State argues that "impos[ing] strict pleading requirements to consumer protection enforcement cases is contrary to law, and is inconsistent with the remedial objectives of these laws." It also urges that Rule 9(b)'s

derstanding, in violation of 6 *Del. C.* § 2532(12).

5. Del.Super., C.A. No. 98C–09–064–RRC, 1999 WL 1442014, Cooch, J. (Sept. 3, 1999).

6. Del.Super., C.A. No. 83C–NO–98, 1988 WL 32012, Gebelein, J. (Mar. 30, 1988).

7. "[T]he descriptive headings or catchlines immediately preceding or within the texts of the individual sections of this Codes ... do not constitute part of the law." 1 *Del. C.* § 306. Therefore, I do not find the fact that the CFA is labeled "Consumer Fraud" conclusive of the issue whether Rule 9(b) applies.

special pleading requirement be found inapplicable to an enforcement proceeding brought by the Attorney General under the CFA and the UDTPA.

I recognize, as PCH argues, that other cases have applied Superior Court Rule 9(b)'s pleading standard to suits brought under the CFA or the UDTPA. Nevertheless, those cases did so without any explicit analysis of whether or not it was the proper standard to apply. For this reason, I do not regard those cases as authoritative on the question here presented.[8] Moreover, neither the Delaware Supreme Court nor the General Assembly has spoken directly on the issue. Thus, I will treat it as one of first impression.[9]

Rule 9(b) is an exception to the liberal "notice pleading" standard applicable to most pleadings under the Rule 8.[10] Legal scholars have noted that Rule 9(b) "probably originated in equity pleading and reflected a reluctance to upset or investigate judgments, settled accounts and other completed transactions."[11] In its modern form, the rule's purpose is described by the Delaware Supreme Court as "'serv[ing] to discourage the initiation of suits brought solely for their nuisance value, and safeguard[ing] potential defendants from frivolous accusations of moral turpitude.'"[12] In view of this history and purpose, the court in *John P. Villano, Inc. v. CBS, Inc.*, refused to apply Federal Rule of Civil Procedure 9(b) to a federal statutory claim of false advertising because "nothing in the language or history of rule 9(b) suggests that it is intended to apply, willy-nilly, to every statutory tort that includes an element of false statement."[13]

■■■ The Delaware Supreme Court showed a similarly nuanced approach in deciding whether Rule 9(b)'s particularity requirements should be applied to an action for bad faith in *Desert Equities*.[14] Noting that the essential elements of a bad faith claim bore little resemblance to the

---

8. In both *Rinaldi* and *J.E. Rhoads*, the Superior Court applied Rule 9(b) to actions brought by the State under the CFA and the UDTPA, without analysis of the issue. Moreover, I note that Court of Chancery Rule 9(b) differs substantially from Superior Court Rule 9(b), both in its plain language (Superior Court Rule 9(b) adds "negligence" to the list of averments that must be pleaded with particularity) and its historical development (as a traditional equity pleading requirement [*see infra* note 12]).

9. One decision of this court applied Rule 9(b) to a claim made under the Illinois Consumer Fraud Act, based on an Illinois federal court case interpreting that act. *Weiss v. Leewards Creative Crafts, Inc.*, Del. Ch., C.A. No. 12384, 1993 WL 155493, Chandler, V.C. (Apr. 29, 1993). Subsequent decisions in Illinois state courts are to the contrary. *See, e.g., Zinser v. Rose*, 3d Dist., 245 Ill.App.3d 881, 185 Ill.Dec. 574, 614 N.E.2d 1259 (1993).

10. *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, Del.Supr., 624 A.2d 1199, 1207 (1993). Rule 8 provides that claims "shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the party deems itself entitled." Ct. Ch. R. 8(a).

11. William M. Richman, *et al., The Pleading of Fraud: Rhymes without a Reason*, 60 S. Cal. L.Rev. 959, 967 (May 1987). Before the merger of law and equity, fraud and mistake could not be asserted as an equitable defense to an action at law. *Id.* at 966. Because the litigant had to sue at equity to enjoin enforcement of the law court's judgment, equity courts required fraud to be plead with particularity in these cases. *Id.* The authors hypothesize that the particularity requirement's "purpose was tied closely to the reluctance to question settled transactions." *Id.* at 967.

12. *Desert Equities, Inc.*, 624 A.2d at 1208 (quoting *U.S. ex rel Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C.Cir.1981)).

13. 176 F.R.D. 130 (S.D.N.Y.1997).

14. 624 A.2d at 1208.

elements of a claim of fraud, the Supreme Court concluded that pleading with particularity was not required in that case.[15] Applying the same mode of analysis here leads me to conclude that claims by the Attorney General brought under the CFA or the UDTPA are not sufficiently analogous to claims for common law fraud to justify the application of Rule 9(b)'s heightened pleading standard.

Common law fraud differs remarkably from "statutory fraud" under the CFA. Both the CFA and the UDTPA stem from the 1914 Federal Trade Commission Act and its later amendment in 1938. They are consumer protection laws and remedies for unfair competition, not simply codified versions of common law fraud.[16] Referring to the policy behind the CFA, the Delaware Supreme Court stated in *Brandywine Volkswagen, Ltd. v. State, Dept. of Consumer Affairs,* "An obvious objective of the law is to raise the standards which the public has right to expect from all business enterprises...." [17]

■ Though sometimes referred to as "statutory fraud," an action under the CFA is not a "fraud" action in any ordinary sense. The elements of common law fraud are:

1) a false representation, usually one of fact, made by the defendant;

2) the defendant's knowledge or belief that the representation was false, or

was made with reckless indifference to the truth;

3) an intent to induce the plaintiff to act or to refrain from acting;

4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and

5) damage to the plaintiff as a result of such reliance.[18]

To establish a claim under the CFA, however, a plaintiff need only prove:

[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby.[19]

Thus, the two actions are quite distinct. Scienter, intent to induce action, reliance, and damages are conspicuously missing from the elements of the CFA. "The [only] common thread which runs through actions of fraud or deceit at law ... and actions under 6 *Del. C.* § 2513 is the making of a false or misleading statement or the concealment, suppression or omission of information, thereby creating a condition of falseness." [20]

---

15. *Id.* The Supreme Court utilized the definition of fraud found in *Stephenson v. Capano Dev., Inc.,* Del.Supr., 462 A.2d 1069, 1074 (1983).

16. Where common law fraud and the CFA overlap, the Supreme Court has ruled, "In all other respects, however, the statute must be interpreted in light of established common law definitions and concepts of fraud and deceit." *Stephenson,* 462 A.2d at 1074. However, as Judge Quillen noted in *State, ex rel. Brady v. Gardiner,* "The last statement is almost tongue in cheek, since there is so little

left." Del.Super., C.A. No. 98C–02–135–WTQ, 2000 WL 973304, letter op. at 7, Quillen, J. (June 5, 2000).

17. Del.Supr., 312 A.2d 632, 634 (1973).

18. *Stephenson,* 462 A.2d at 1074.

19. 6 *Del. C.* § 2513(a).

20. *In re Brandywine Volkswagen, Ltd.,* Del.Super., 306 A.2d 24, 27 (1973), *aff'd sub nom. Brandywine Volkswagen, Ltd. v. State Dept. of Consumer Affairs,* Del.Supr., 312 A.2d 632 (1973).

Similarly, actions brought under the UDTPA have little in common with claims for common law fraud. The Delaware Supreme Court stated in *Young v. Joyce,* "6 *Del. C.* § 2531 *et seq.* codifies the Uniform Deceptive Trade Practices Act which, in turn, codifies the common law of unfair competition."[21] To establish a claim under the UDTPA, a party must prove that "a person ... in the course of a business, vocation, or occupation" engages in any one of the twelve enumerated "deceptive trade practices" under this act.[22] For the most part, no proof of the elements of common law fraud is required under the UDTPA.

I also take note of the legislature's intent that both of these acts be liberally construed. Section 2512 of the CFA states:

> The purpose of this subchapter shall be to protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within this State. It is the intent of the General Assembly that such practices be swiftly stopped and that this subchapter shall be liberally construed and applied to promote its underlying purposes and policies.

The same liberal construction has been applied to the UDTPA.[23]

I conclude that the remedial goals of these two acts are inconsistent with the application of the particularized pleading requirements of Rule 9(b) to enforcement actions brought by the Attorney General to protect the consuming public. Certainly, equity's original reluctance to upset legal judgments on grounds of fraud or mistake is irrelevant in such an action.

Similarly, claims under the two acts do not involve charges of moral turpitude and are unlikely to be brought by the State for purposes of harassment. Thus, none of the purposes served by application of that rule to charges of fraud is implicated by claims under either statute.

On the contrary, a requirement that the State plead with particularity the "who, what, where, and when" of each and every one of 750,000 violations alleged would serve only to defeat the legislative mandate to the Attorney General in bringing actions such as these on behalf of the citizens of this State. Finally, I note that the liberal discovery rules and pretrial practice will serve both the State and PCH in properly discovering and defining the scope of issues to be litigated. Therefore, I am satisfied that defendants will be able to adequately provide an answer to the State's complaint.

The courts of other jurisdictions have also dealt with the applicability of heightened pleading requirements to similar complaints against PCH by other state consumer protection authorities. While it is hard to discern a clear trend in those decisions, the weight of the better reasoned authority is that either Rule 9(b) does not apply to such suits or, at a minimum, that allegations like those found in the States' complaint here are an adequate statement of "the circumstances constituting fraud ... with particularity."

For example, in *State of Wisconsin v. Publishers Clearing House,* the Circuit Court accepted the State's argument that Rule 9(b) was inapplicable, since "[t]he claim does not relate to the content of a single item, but includes allegations re-

21. *Del.Supr.,* 351 A.2d 857, 859 (1975).

22. *6 Del. C.* § 2532.

23. *State, ex rel. Brady v. Fallon,* Del.Super., C.A. No. 96A–12–010–RRC, 1998 WL 283438, Cooch, J. (Feb. 27, 1998).

garding large numbers of misrepresentation" and "this type of claim is particularly suited to notice pleading."[24]  Similarly, in *State of Kansas, ex rel. Stovall v. Publishers Clearing House*,[25] the District Court judge held that in light of the Kansas legislature's intent of affording consumers increased protections under the Kansas Consumer Protection Act and the Kansas Court of Appeals decision not to require a clear and convincing burden of proof, pleading with particularity would not be required.

In *State of Vermont v. Publishers Clearing House*,[26] the Vermont Superior Court denied PCH's 9(b) motion to dismiss, noting that Rule 9(b)'s policy concerns of safeguarding potential defendants from allegations of moral turpitude, eliminating strike suits, and/or avoiding the reopening of complicated transactions or judicial decrees were not applicable to the law enforcement action there at issue.[27]  That court ultimately concluded that Rule 9(b) did apply but found the State's pleading, which bears a striking resemblance to that filed here, was adequate to meet the rule's pleading requirement, in part because the details of the allegedly illegal activity were better fully known to the defendants.  Indeed, because the allegations of fact related entirely to a series of letters sent by the defendants to residents of Vermont, the court inferred that the defendants knew more about the alleged scheme than the State ever would.  Thus, PCH:

> will not here be deprived of an ability to "effectively prepare" a response; it will not be required to "divine" how the quoted excerpts fit into the "context of the mailing as a whole."  It seems far more probable that defendant is the party with full and superior ability to piece together the challenged quotations with the context of the entire transaction.  No transaction involved any human interaction, each consisted instead of an envelope filled with Publishers' own creations.[28]

Because I conclude that Rule 9(b) is inapplicable to actions brought under the CFA or the UDTPA, I do not need to address the second part of the analysis, *i.e.*, whether the State has satisfied the requisite level of particularity under 9(b).  I do note, however, that similar pleadings withstood Rule 9(b) challenges in *State of Vermont*.[29]

---

24.  Wis. Cir. Ct., Case No. 99CV27, op. at 11, Rehm, J. (June 30, 2000).

25.  Kan. Dist. Ct., Kan. Div. Nine, Case No. 00C91, mem. op. at 4, Andrews, J. (July 5, 2000).

26.  Vt.Super., Docket No. 41–1–00 WnCiv, op. at 2, Katz, J. (Oct. 10, 2000).

27.  Other cases have gone the other way, but without persuasive analysis: *State of West Virginia, ex rel. McGraw v. Publishers Clearing House*, W.V. Cir. Ct., C.A. No. 00–C–151, Stucky, J. (May 22, 2000) (PCH's motion to dismiss under 9(b) granted by order); *State of Hawaii v. Publishers Clearing House*, Haw. Cir. Ct., No. 00–1–000229, Hirai, J. (May 25, 2000) (Rule 9(b) motion granted by order); and *State of Oklahoma, ex rel. Edmondson v. Publishers Clearing House*, Okla. Dist. Ct.,

Case No. C.I.2000–527–64, Gray, J. (2000) (order requiring amendment to complaint). *But see People v. Superior Court of Los Angeles (Jayhill Corp.)*, Cal.Supr., 9 Cal.3d 283, 107 Cal.Rptr. 192, 507 P.2d 1400 (1973) (denying motion to dismiss for failure to state claim with particularity in consumer protection action brought by State).

28.  *Id.* slip op. at 4.

29.  I also note that the State avoided pleading "fraud," to further its argument that Rule 9(b) is inapplicable to its complaint. In each of the 18 separate claims against PCH under the CFA, the State does not once aver "fraud." The closest it comes is to allege "misrepresentation."  Similarly, in its claims brought under the UDTPA, the State avoids averments of fraud, instead framing its claims under this act as "causing . . . a likelihood of confusion."

## IV. CONCLUSION

For the reasons stated above, I conclude that Court of Chancery Rule 9(b) is inapplicable to actions brought by the Attorney General under the CFA and the UDTPA. Defendants' motion to dismiss is DENIED. IT IS SO ORDERED.