COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E. MOLINA
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report:  May 6, 2020
Draft Report:  April 16, 2020
Date Submitted:  January 24, 2020

Seth L. Thompson, Esquire
Parkowski, Guerke & Swayze, P.A.
1105 N. Market Street, 19th Floor
Wilmington, DE 19801

Mr. Timothy Burley
620 N. Broom Street
Wilmington, DE 19805
burleytimothy35@yahoo.com

Re:     *Deutsche Bank Tr. Co. Ams. v. Burley*
         C.A. No. 2017-0912-SEM

Dear Counsel and Parties:

Pending before me is a motion for partial judgment on the pleadings.  The plaintiff seeks judgment in its favor, and against the defendant, on an equitable subrogation claim.  The plaintiff contends that its predecessor-in-interest satisfied defendant's mortgage in a refinancing transaction, the defendant has not paid it back, and equity dictates judgment for the plaintiff on the balance due (plus interest).  The defendant disagrees that equity tips in the plaintiff's favor arguing that the refinancing was fraudulent and, as such, the plaintiff should not be able to recover anything from the defendant.  I find I cannot dispose of the equitable subrogation claim on the pleadings.  I, therefore, recommend that the motion for partial judgment on the pleadings be denied to allow for discovery into the refinancing transaction

and the factual predicate necessary to determine which way equity shifts in this matter. This is my final report. [1]

## I. BACKGROUND[2]

On or about July 30, 2004, the defendant Timothy Burley ("Defendant") purchased property located at 611 North Harrison Street in Wilmington, Delaware (the "Property") for $85,000.00.[3] Defendant made a $7,000.00 down payment and financed the remainder through a mortgage with Pike Creek Mortgage Services Inc., nominee Mortgage Electronic Registration Systems Inc. ("MERS") (the "First Mortgage").[4]

The First Mortgage was satisfied on March 30, 2007 by Homecomings Financial, LLC ("Homecomings").[5] In recognition of the payoff, a mortgage was executed, purportedly between Homecomings, nominee MERS, and Defendant (the "Second Mortgage").[6] I use "purportedly" because Defendant contends the Second Mortgage was fraudulent and his signature thereon forged. Defendant did, however,

---

[1] This report makes the same substantive findings and recommendations as my April 16, 2020 draft report, to which no exceptions were filed.

[2] The facts in this report reflect the well-pled facts, taken in the light most favorable to the defendant as the non-moving party.

[3] Docket Item ("D.I.") 6.

[4] *Id.*

[5] D.I. 1, Ex. G; D.I. 9. In addition to the well-pled factual allegations, I also consider the exhibits attached thereto, giving each the weight it deserves. *See Mehta v. Mobile Posse, Inc.*, 2019 WL 2025231, at * 2 (Del. Ch. May 8, 2019).

[6] D.I. 1, Ex. A.

make payments under the Second Mortgage through 2015, although Defendant pled that the payments were meant to apply to the First Mortgage.[7] When Defendant became aware of the Second Mortgage and underlying fraud, sometime in 2015, Defendant stopped making payments.[8]

On November 16, 2016, the Second Mortgage was assigned to plaintiff, Deutsche Bank National Trust Company Americas, as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS6 ("Plaintiff").[9] With the Second Mortgage in default, Plaintiff, on December 22, 2017, filed a Verified Complaint for foreclosure on the Property.[10] Plaintiff sought foreclosure *in rem* under *scire facias* proceedings and under an equitable subrogation claim. Defendant answered the complaint on January 26, 2018.[11] Plaintiff then filed this motion for partial judgment on the pleadings on July 19, 2019,[12] it was heard on January 17, 2020,[13] and it was submitted for decision on January 24, 2020, when the supplemental submissions I requested were filed.[14]

---

[7] D.I. 6.
[8] *Id.*
[9] D.I. 1, Ex. B.
[10] D.I. 1.
[11] D.I. 6-11.
[12] D.I. 15.
[13] D.I. 26.
[14] D.I. 30.

## II.  ANALYSIS

Plaintiff moves for judgment on the pleadings for its equitable subrogation claim under Court of Chancery Rule 12(c).  Plaintiff's motion may be granted if "no material issue of fact exists and [Plaintiff] is entitled to judgment as a matter of law."[15]  I am "required to view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party[;]"[16] here, Defendant.

Equitable subrogation "is an equitable remedy originally borrowed from the civil law[.]"[17]  In the refinancing context, it can be invoked such that "[o]ne who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment."[18]  Delaware courts require any party seeking equitable subrogation to establish five factors:

> (1) payment must have been made by the subrogee to protect his or her own interest; (2) the subrogee must not have acted as a volunteer; (3) the debt paid must have been one for which the subrogee was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not work any injustice to the rights of others.[19]

---

[15] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

[16] *Id.*

[17] *E. States Petroleum Co. v. Universal Oil Prods. Co.*, 44 A.2d 11, 15 (Del. Ch. 1945).

[18] *E. Sav. Bank, FSB v. CACH, LLC*, 2014 WL 3827496, at *4 (Del. Super. July 31, 2014) (quoting Restatement (Third) of Property (Mortgages) § 7.6(a) (1997)).

[19] *E. Sav. Bank, FSB v. CACH, LLC*, 124 A.3d 585, 590 (Del. 2015) (quoting *Reserves Dev. LLC v. Severn Bank, FSB*, 2007 WL 4054231, at *17 (Del. Ch. Nov. 9, 2007), *aff'd*, 961 A.2d 521 (Del. 2008)).

As these factors demonstrate, equitable subrogation has its limits. It cannot be used by a mere volunteer: "one who pays the debt of another upon his own initiative, and without invitation, compulsion or the necessity for self-protection[.]"[20] A claim of equitable subrogation is also susceptible to equitable defenses (e.g., unclean hands).[21] And, "[m]oreover, Delaware courts have refused to apply subrogation when it would 'work any injustice to the rights of others.'"[22]

Although Plaintiff attempts to couch its equitable subrogation claim in simplistic terms, viewing the pleadings in a light most favorable to Defendant (as I must under Rule 12(c)), its likelihood of success is less than clear. Accepting Defendant's allegations that he did not request nor approve the Second Mortgage, the refinancing was fraudulent, and his signature was forged on the refinancing documents, I have more questions than answers. For example, was Plaintiff (through its predecessor-in-interest) a mere volunteer when it paid off the First Mortgage? Or, was Plaintiff's predecessor-in-interest induced by fraud to pay Defendant's debt, ripening an equitable subrogation claim? Or, did Plaintiff's predecessor-in-interest engage in, know of, or reasonably should have known of the underlying fraud to

---

[20] *E. States Petroleum Co.*, 44 A.2d at 15. But, on the other hand, "one who is induced by fraud to pay the debt of another is, ordinarily, not a mere volunteer, and may rely on subrogation." *Id.*

[21] *See Oldham v. Taylor*, 2003 WL 21786217, at *5 (Del. Ch. Aug. 4, 2003).

[22] *E. Sav. Bank, FSB v. CACH, LLC*, 124 A.3d at 593.

such extent that equity shifts away from Plaintiff and in Defendant's favor? I cannot answer these questions on the limited, disputed record. Stated another way, I cannot determine which way equity tilts without a more complete factual record.

Plaintiff urges me to follow the lead of *Oldham v. Taylor*.[23] In *Oldham*, a refinancing occurred without the involvement or consent of one joint owner. Justice Jacobs (sitting by designation) found, however, that the non-consenting joint owner was still personally liable, under an equitable subrogation theory, for the benefit she received from the new mortgage. In so holding, Justice Jacobs overruled the joint owner's argument that a defect in the refinancing (namely, that there was no Delaware attorney at the closing) amounted to unclean hands, barring recovery, because there was no violation of the "public policy or law of Delaware[.]"[24]

*Oldham* is distinguishable, however, in its procedural posture and on its merits. First, *Oldham* was decided after a full trial on the merits, lending support to my inclination to require that these equitable issues be more fully developed before disposition. Second, the alleged inequities in *Oldham* pale in comparison to the inequities alleged here. Defendant's allegations not only smell of equitable defenses but also call into question whether Plaintiff can establish the five equitable subrogation factors.

---

[23] 2003 WL 21786217.
[24] *Id.* at *5.

To be clear, the inequities alleged here are disputed. I make no findings of fact or conclusions of law regarding the enforceability of the refinancing transaction and Second Mortgage. What I do find is that discovery should commence and the matters should be teed up for resolution on a more-developed record.[25]

## III. CONCLUSION

For the foregoing reasons, I recommend that the motion for partial judgment on the pleadings be denied. I find I cannot dispose of Plaintiff's equitable subrogation claim on the pleadings and that discovery into the many lingering questions is necessary. The equitable issues at stake should be weighed and adjudged on a more-developed factual record. This is a final report and exceptions may be taken pursuant to Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Selena E. Molina*

Master in Chancery

---

[25] *See, e.g.*, *Claros Diagnostics, Inc. S'holders Rep. Comm. v. OPKO Health, Inc.*, 2020 WL 829361, at *13 (Del. Ch. Feb. 19, 2020) (explaining, typically, "application of unclean hands is based upon a developed factual record").