**EFiled: Aug 31 2015 03:38PM EDT**
**Transaction ID 57793510**
**Case No. 9989-VCN**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|                                  |   |                        |
|----------------------------------|---|------------------------|
|                                  | : |                        |
| IN RE CERTISIGN HOLDING, INC.    | : | **C.A. No. 9989-VCN**  |
|                                  | : |                        |

## MEMORANDUM OPINION

Date Submitted: May 5, 2015
Date Decided: August 31, 2015

Michael A. Pittenger, Esquire and Angela C. Whitesell, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware, Attorneys for Petitioners.

David J. Margules, Esquire of Ballard Spahr LLP, Wilmington, Delaware, and M. Norman Goldberger, Esquire and Laura E. Krabill, Esquire of Ballard Spahr LLP, Philadelphia, Pennsylvania, Attorneys for Respondent.

NOBLE, Vice Chancellor

Petitioners CertiSign Holding, Inc. ("CertiSign" or the "Company") and Nicola Jose Rogerio Cosentino ("Cosentino," and with CertiSign, "Petitioners") brought this action pursuant to Section 205 of the Delaware General Corporation Law (the "DGCL") seeking an order (i) declaring that shares of putative stock of the Company are shares of valid stock and (ii) approving a corresponding stock ledger. They have moved for entry of a final order granting judgment on the pleadings with respect to their Verified Petition for Relief Pursuant to 8 *Del. C.* § 205 (the "Petition").

Intervenor/Respondent Sergio Kulikovsky ("Kulikovsky"), a former CertiSign director and officer, opposes entry of final relief at this time. Although he agrees that the substance of the Petition should ultimately be granted, he argues that he will suffer harm should final relief be entered before the Court resolves his Verified Counter-Petition for Relief Pursuant to 8 *Del. C.* § 205 (the "Counter-Petition").

The Court must determine whether partial judgment on the pleadings is warranted in Petitioners' favor and if so, whether there is just cause to delay entry of final partial judgment.

1

## I. BACKGROUND

### A. *CertiSign's Problematic Capitalization*

CertiSign was incorporated in Delaware on December 20, 2004, by non-party Certipar, S.A. ("Certipar") to serve as Certipar's holding company. Certipar wholly owns Certisign Certificadora Digital S.A., which "provides public key infrastructure based solutions to financial institutions, governments, and enterprises that increasingly utilize unsecured IP networks to link business processes, exchange information, and conduct banking and commerce transactions."[1]

On March 14, 2005, the Company's incorporator executed a written consent naming Cosentino, Kulikovsky, and Edgar Rafael Safdie ("Safdie") to the Company's board of directors. The board then approved, on March 26, 2005, an amendment to, and restatement of, the Company's initial certificate of incorporation (the "Amended Certificate"), which authorized the following classes and series of stock: (i) 15,000,000 shares of Class A Common Stock, (ii) 5,000,000 shares of Class B Common Stock, (iii) 5,000,000 shares of Series A Preferred Stock, and (iv) 3,500,000 shares of Series B Preferred Stock.[2] On March 29, 2005, CertiSign purported to issue shares to Certipar's stockholders: CKS Holding, Inc.

---

[1] Pet. ¶ 3.

[2] All classes and series had a par value of $0.001 per share. The Company's initial certificate had authorized 3,000 shares of common stock with a $0.001 per share par value.

("CKS"), Darby Technology Ventures Fund I, LLC ("Darby"), and VeriSign Capital Management, Inc. ("VeriSign"). Those stockholders exchanged their Certipar stock for CertiSign's, with Certipar becoming CertiSign's wholly owned subsidiary.[3] Also on March 29, CertiSign and CKS entered into a Stock Purchase Agreement and a Debt Contribution Agreement, and CertiSign, Darby, and Intel Capital Corporation ("Intel") entered into a Series B Preferred Stock Purchase Agreement. The board approved each of the agreements and stock issuances (the "Stock Issuances") by unanimous written consent.[4]

Importantly however, the Amended Certificate, which authorized the issuance of those shares, was not filed with the Delaware Secretary of State until April 1, 2005. Therefore, the Stock Issuances were invalid.[5] The technical defect was not discovered until 2012, during due diligence for a potential transaction. In the interim, CertiSign and all of its constituents had operated under the mistaken assumption that the Company was properly capitalized.

---

[3] CKS also received a warrant to purchase additional shares of the Company's stock.

[4] On or about March 29, 2005, the Company delivered stock certificates for the following shares to CKS, Darby, Intel, and VeriSign: 3,091,259 shares of Class A Common Stock to CKS; 140,750 shares of Class A Common Stock to Darby; 767,991 shares of Class B Common Stock to VeriSign; 3,884,218 shares of Series A Preferred Stock to CKS; 1,050,000 shares of Series B Preferred Stock to Darby; and 600,000 shares of Series B Preferred Stock to Intel.

[5] See 8 Del. C. § 151(a) ("Every corporation may issue 1 or more classes of stock or 1 or more series of stock within any class thereof . . . as shall be stated and expressed in the certificate of incorporation or of any amendment thereto . . . .").

3

B. *CertiSign's Attempts to Rectify the Mistakes and Kulikovsky's Objections*

In the second half of 2012, CertiSign's counsel proposed a series of steps to remedy the Company's capitalization defects without judicial intervention. Those measures would have required the Company's board to authorize certain corrective actions. The Company sought approval not only by its then-current directors, but also by Cosentino and Kulikovsky, two of the three original board members. Their support was deemed necessary because actions that had altered the board's composition since incorporation had relied on the validity of the Stock Issuances. Because the Stock Issuances were defective, it was unlikely that the Company's then-current directors had been validly named to the board. In that case, approval by a majority of the original board would have constituted valid board action.[6]

Kulikovsky refused to participate in the self-help process for reasons that the parties now debate.[7] The Company then decided to file the Petition, seeking the Court's ratification of its capital structure. It provided notice to each of its stockholders, CKS, Darby, Intel, and GeoTrust, Inc., and to some former directors, including Kulikovsky.[8] Each party other than Kulikovsky approved and supported the Petition and requested relief. Kulikovsky's counsel wrote to the Company on June 6, 2014, expressing his concern that "the proposed Petition does not seek to

---

[6] One member of the original board, Safdie, had resigned as a director before March 1, 2008.

[7] His reasons are not material for purposes of the pending motion.

[8] VeriSign had transferred its interest in CertiSign to GeoTrust, Inc. in 2010.

4

regularize the Company's entire capital structure."[9]  Kulikovsky indicated that he would consent to the entry of the relief sought through the Petition only if the Petition were amended to also address "(a) the 3 million warrants held by CKS Holding; (b) the 1 million options held by Mr. Kulikovsky and Nicola Cosentino, and (c) the 9% debt of approximately $3.5 million (US) owed by CertiSign to Mr. Kulikovsky."[10]

## II.  NATURE AND STAGE OF THE PROCEEDINGS

Petitioners initiated proceedings in this Court seeking an order validating the Stock Issuances and approving a stock ledger reflecting those shares.[11]  Kulikovsky intervened and filed the Counter-Petition, which seeks judicial validation of (i) 1,150,000 options to purchase shares of CertiSign's Class A common stock and

---

[9] Pet. Ex. C ("June 6, 2014, Letter") at 1.

[10] *Id.*

[11] Their proposed stock ledger was attached as Exhibit D to the Petition.  In addition to the Stock Issuances, Petitioners seek ratification of 1,850,000 shares of Series B Preferred Stock.  CKS, Darby, and Intel hold 750,000; 700,000; and 400,000 of those shares, respectively.  CKS purchased its shares in December 2005 according to its right under a Right of First Refusal and Co-Sale Agreement (the "ROFR Agreement"), entered into on March 29, 2005, by the Company, CKS, and certain other parties.  Although the Company entered into the ROFR Agreement, it cannot locate any records showing board approval of the agreement, raising questions regarding the validity of the issuances.

Darby and Intel purchased shares of Series B Preferred Stock as part of a "second closing" on May 5, 2006.  The Company believes that those shares may be valid because the Amended Certificate was filed before their issuance, but has moved the Court to ratify those shares out of an abundance of caution.

Future reference to ratification of the Stock Issuances incorporates these additional Series B Preferred shares.

5

(ii) a debt of $4,337,693.58 in principal and interest (as of August 31, 2014) owed to an entity owned by Kulikovsky.[12] Petitioners subsequently moved for a final order entering judgment on the pleadings with respect to the Petition.

Kulikovsky does not deny that the Stock Issuances should eventually be ratified. However, he contends that it would not be fair and equitable to validate that putative stock before determining whether the other purported components of CertiSign's capital structure should also be validated. Petitioners counter that unlike the relief they seek, the relief sought by the Counter-Petition raises issues subject to numerous factual disputes, which would require extended proceedings to resolve.[13] The Court must now determine whether it is proper to grant judgment on the Petition while other questions related to CertiSign's capital structure remain unresolved. If Petitioners are entitled to judgment, then the Court must decide whether to enter a partial final order pursuant to Court of Chancery Rule 54(b).

### III. ANALYSIS

The Court will grant a motion for judgment on the pleadings pursuant to Court of Chancery Rule 12(c) "only when no material issue of fact exists and the

---

[12] Kulikovsky did not seek ratification of the warrants referenced in his June 6, 2014, Letter because the Company acknowledged that the warrants were duly authorized and constitute valid obligations. The Counter-Petition was filed as part of a single document, Response to Petition and Verified Counter-Petition. Citations to the Response portion are cited as "Resp."

[13] Petitioners also argue that Kulikovsky's requests are subject to equitable defenses.

movant is entitled to judgment as a matter of law."[14]  The facts pleaded and the

inferences drawn from them are viewed in the light most favorable to the non-

moving party.[15]

The Court's discretion to make an otherwise interlocutory order a final

judgment is guided by Rule 54(b).[16]  The Court may exercise that discretion only

when "(1) the action involves multiple claims or parties, (2) at least one claim or

the rights and liabilities of at least one party has been finally decided, and

(3) . . . there is no just reason for delaying an appeal."[17]  Recognizing "[t]he long

established policy against piecemeal appeals," this Court exercises its discretion

cautiously, and only to "afford a remedy in the infrequent harsh case . . . ."[18]  The

Court may "consider any factor relevant to judicial administrative interests or the

equities of the case," but must at least be satisfied that "the moving party can show

---

[14] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

[15] *Id.*

[16] Rule 54(b) provides, in part,

> When more than 1 claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the Court may direct the entry of a final judgment upon 1 or more but fewer than all of the claims or parties only upon an express determination that there is not just reason for delay and upon an express direction for the entry of judgment.

[17] *In re Tri-Star Pictures, Inc., Litig.*, 1989 WL 112740, at *1 (Del. Ch. Sept. 26, 1989).

[18] *Id.* (internal quotation marks omitted).

some danger of hardship or injustice through delay which would be alleviated by immediate appeal."[19]

A. *Petitioners Are Entitled to Partial Judgment on the Pleadings*

Section 205 of the DGCL authorizes the Court to "[d]etermine the validity of any corporate act or transaction and any stock, rights or options to acquire stock . . . ."[20]

> Section 205 allows the Court to declare that a defective corporate act validated by the Court shall be effective as of the time of the defective corporate act and to make such other orders regarding such matters as it deems proper under the circumstances. A defective corporate act includes any act or transaction purportedly taken by or on behalf of the corporation that is, and at the time . . . would have been, within the power of a corporation . . . , but is void or voidable due to a failure of authorization.[21]

The Court may "[d]eclare that shares of putative stock are shares of valid stock" and may "[a]pprove a stock ledger for the corporation that includes any stock ratified or validated in accordance with [Section 205]."[22]

The Petition appears tailor-made for Section 205 relief. The Company's outstanding stock is defective because it was issued days before the Amended Certificate authorizing those shares was filed with the Delaware Secretary of State. CertiSign operated for years under the assumption that it was validly capitalized,

---

[19] *Id.* (internal quotation marks omitted).
[20] 8 *Del. C.* § 205(a)(4).
[21] *In re Numoda Corp. S'holders Litig.*, 2015 WL 402265, at *7 (Del. Ch. Jan. 30, 2015).
[22] 8 *Del. C.* § 205(b)(5)-(6).

eventually discovering the issue in 2012 during due diligence for a potential transaction. The Company and all of its stockholders agree that the current predicament arose from a ministerial error, and all record stockholders have signed acknowledgements consenting to the relief requested in the Petition.[23] As noted, Kulikovsky acknowledges that Petitioners will ultimately obtain relief, but suggests that it would be inequitable to grant the Petition before the Court addresses his Counter-Petition, arguing that all components of the Company's capital structure should be considered together.[24] His Counter-Petition allegedly raises factual issues relevant to whether it would be equitable to grant judgment on the Petition at this time.

Kulikovsky points to Section 205(d), which allows the Court to consider, when determining whether to exercise its Section 205 powers,

> Whether any person will be or was harmed by the ratification or validation of the defective corporate act, excluding any harm that would have resulted if the defective corporate act had been valid when approved or effectuated;
>
> . . . Whether any person will be harmed by the failure to ratify or validate the defective corporate act; and

---

[23] The parties debate whether Kulikovsky is a beneficial owner, but they agree that he is not a record holder of CertiSign stock.

[24] *See* Tr. of Oral Argument on Pet'rs' Mot. for Partial J. on the Pleadings 19 ("Oral Argument Tr.") ("[T]he question here is not really whether ultimately the Court will enter judgment on the petition. The question is at what point and under what circumstances and with what conditions the Court will enter that judgment.").

9

. . . Any other factors or considerations the Court deems just and equitable.[25]

Kulikovsky suggests that "validating some corporate acts without determining the validity of the Company's full capital structure would substantially prejudice [his] and other interested parties' rights."[26] Because the Court may shape the equitable relief it grants under Section 205 to minimize adverse consequences to affected parties, Kulikovsky contends that it would be premature to enter relief for Petitioners before the Court hears facts regarding the potential harm he faces.[27] He hypothesizes that harm as follows:

> If the corporate acts awarding Kulikovsky Options are validated at the same time that the Company's initial stock issuances are determined to be valid, Kulikovsky can exercise options immediately, in which case he undeniably would have all the rights of a stockholder, including: voting, attending stockholder meetings, seeking a books and record inspection and, if necessary, pursuing direct or derivative litigation. Petitioners have made it plain that they do not recognize Kulikovsky as having any of those rights today. If the initial shares are validated now without addressing the validity of the option grant, Petitioners will have a free hand to do what they want without considering the impact on Kulikovsky or his reaction.[28]

---

[25] 8 *Del. C.* § 205(d)(3)-(5).

[26] Resp't's Answering Br. in Opp'n to Pet'rs' Mot. for Partial J. on the Pleadings 14. He also argues that Petitioners face no harm from a delay in resolving the Petition.

[27] He argues that "[v]alidation of the Company's initial stock issuance should be conditioned on the acceptance of all of the acts taken by the Company under the mistaken assumption that the issuance was proper in the first place." *Id.* at 16-17.

[28] *Id.* at 19-20.

Petitioners respond that the speculative harm that Kulikovsky identifies cannot as a legal matter bar their entitlement to relief because the Court is statutorily prohibited from considering "any harm that would have resulted if the defective corporate act had been valid when approved or effectuated."[29] If the Stock Issuances had been made validly in 2005, then Kulikovsky would face the same theoretical harm he has described while litigating the substance of the Counter-Petition.

Kulikovsky counters that even if the harm he alleges cannot be considered under Section 205(d)(3), the Court could recognize it under Section 205(d)(5), which allows consideration of "[a]ny other factors or considerations the Court deems just and equitable." However, his attempt to avoid Section 205(d)(3) violates accepted rules of statutory construction that provide "that specific provisions should prevail over general provisions, and that words in a statute should not be construed as surplusage if there is a reasonable construction which will give them meaning."[30] Reading Section 205(d)(5) as authorizing the Court to analyze factors that are specifically barred from consideration by Section 205(d)(3) would be unreasonable.[31]

---

[29] 8 *Del. C.* § 205(b)(3).

[30] *A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114, 1131 (Del. 2009) (internal quotation marks omitted).

[31] In formulating relief in a Section 205 action, the Court has discretion to address case-specific concerns. Kulikovsky is worried about the risk of CertiSign's

Kulikovsky has not identified any persuasive reason why the Petition should not be granted now; indeed, he accepts that Petitioners will ultimately obtain the relief they seek.[32]  Therefore, judgment on the Petition's sole count is warranted in Petitioners' favor.[33]

## B. *A Rule 54(b) Partial Final Judgment Will Not Be Entered*

For the Court to enter a Rule 54(b) partial final judgment, it must be satisfied that this is the "infrequent harsh case" to justify departure from the policy against piecemeal appeals.[34]  This action involves multiple claims and the claims raised in the Petition have been finally decided; the Rule 54(b) inquiry thus focuses on

---

board's engaging in conduct that will adversely affect him.  One way to reduce the magnitude of that risk is to provide him with certain informational rights pending resolution of the Counter-Petition.  Thus, the Company will provide Kulikovsky with advanced notice of any fundamental transactions that would alter the Company's capitalization or result in the sale of the Company or material assets of the Company or its subsidiaries outside the ordinary course of business.

[32] In response to the Court's inquiry at oral argument about "entering partial judgment but not giving it a 54(b) blessing," Kulikovsky's counsel indicated that such ruling would satisfy his client.  Oral Argument Tr. 36.

[33] This is not to say that partial judgment will always be warranted in the Section 205 context.  Section 205 gives the Court flexibility to exercise its equitable powers, and the circumstances here do not justify delaying judgment on the Petition.  Notably, the relief requested in the Petition will not change who controls the Company.  Kulikovsky would not have a control bloc even if he were granted the options sought in the Counter-Petition and he exercised them.

The Stock Issuances and the corresponding stock ledger are validated.  The stock ledger may later be revised, if appropriate, based on resolution of the claims asserted in the Counter-Petition.

[34] *See Opportunity P'rs L.P. v. Hill Int'l., Inc.*, 2015 WL 3765353 (Del. Ch. June 16, 2015).

whether there is just reason for delaying an appeal.[35]  Even when a "claim can be

severed from the other claims without delaying or otherwise affecting this Court's

adjudication of the remaining claims," a Rule 54(b) order will not be entered

absent "some danger of hardship or injustice through delay which would be

alleviated by immediate appeal."[36]

Petitioners have failed to establish a sufficient danger of hardship or

injustice to justify entry of a final order on the Petition.  The Court acknowledges

that the defective Stock Issuances do create some uncertainty that could be lifted

by a final, non-appealable judgment.  How much uncertainty exists is questionable.

For example, on or about June 3, 2013, CKS removed Kulikovsky from the board,

a corporate action that Kulikovsky does not dispute.  The Company has operated

for a decade despite the technical defects associated its stock, and it has identified

no imminent danger of hardship or injustice that would be avoided by an

immediate entry of final judgment, as opposed to the entry of a final order in the

ordinary course.[37]

---

[35] *See supra* notes 16-19 & accompanying text (setting forth the factors the Court considers when determining whether to grant Rule 54(b) relief).

[36] *Tri-Star Pictures*, 1989 WL 112740, at *1-2 (internal quotation marks omitted).

[37] CertiSign did not learn of the problem until 2012.  It then sought to correct the problem through self-help measures.  Of course, the statutory relief it seeks here was not available until Section 205 was enacted in 2014.

This is not a case where a party might benefit from an immediate appeal to reverse a possible error by the Court.[38] Rather, Petitioners want the finality that could be achieved by the expiration of the period for an appeal.[39] There is no serious doubt or disagreement that the relief sought by the Petition will ultimately be granted; only the circumstances and conditions surrounding the final entry of a judgment are unsettled. Petitioners have not adequately explained the injustice they would suffer by the Court's entry of a partial judgment in their favor but without Rule 54(b) finality.[40]

Petitioners invoke considerations of judicial economy, which may weigh in favor of entering a Rule 54(b) order. They argue that if the Court grants them relief, CertiSign will be able to put in place an indisputably valid board that could then consider the relief Kulikovsky requests in the Counter-Petition, possibly

---

[38] *See, e.g.*, *Opportunity P'rs*, 2015 WL 3765353, at *3 ("It would be 'harsh' (in my estimation) not to facilitate the Company's only opportunity to correct in a timely fashion what it [believes] to be my mistake.").

[39] Petitioners argue that Kulikovsky is now taking a position regarding the board's authority that will cast a cloud over the board's actions until the stock is validated. However, Petitioners' motion for partial judgment on the pleadings will be granted, and Kulikovsky has acknowledged that the putative stock should ultimately be validated.

[40] Kulikovsky has admitted that "the Company and its current stockholders will be harmed by the failure to validate the defective corporate acts." Resp. ¶ 43. He also contends that "CertiSign stakeholders will be harmed if any of the components of the Company's capital structure (including the warrants, options and debt) are not declared valid." *Id.* Again, although the defective corporate acts should be validated, the dispute is over when, and on what conditions, a final judgment should be entered.

narrowing or mooting certain issues. As a practical matter, it seems doubtful that the parties would resolve the issues raised by the Counter-Petition absent judicial intervention. After all, their inability to do so necessitated these proceedings. As a legal matter, the Court should not grant Rule 54(b) relief merely because doing so may be "more convenient for the future course of the case."[41] For these reasons, the Court will not enter a partial final judgment pursuant to Rule 54(b).

## IV. CONCLUSION

Petitioners' Motion for Partial Judgment on the Pleadings is granted. Their request for a final order pursuant to Court of Chancery Rule 54(b) is denied.

Counsel are requested to confer and to submit an implementing form of order.

---

[41] *Emerald P'rs v. Berlin*, 1996 WL 361510, at *3 (Del. Ch. June 25, 1996) ("The terms used by earlier cases make it clear no wide swath of discretion exists allowing trial courts to enter final judgment on claims even where it would be more convenient for the future course of the case below to have some interim direction from the Supreme Court.").