## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE P3 HEALTH GROUP HOLDINGS, LLC | ) ) | Consol. C.A. No. 2021-0518-JTL |

## MEMORANDUM OPINION

Date Submitted: July 13, 2022
Date Decided: October 26, 2022

Bruce E. Jameson, Corinne Elise Amato, Eric J. Juray, Elizabeth Wang, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; Craig Carpenito, Richard H. Walker, Samuel C. Cortina, KING & SPALDING LLP, New York, New York; *Counsel for Hudson Vegas Investment SPV, LLC*.

William M. Lafferty, Kevin M. Coen, Ryan D. Stottmann, Sara Toscano, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; *Counsel for Jessica Puathasnanon and P3 Health Group Holdings, LLC*.

Kevin R. Shannon, Christopher N. Kelly, Daniel M. Rusk IV, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; William K. Kane, J, SHEPPARD MULLIN RICHTER & HAMPTON LLP, Chicago, Illinois; James C. Wald, SHEPPARD MULLIN RICHTER & HAMPTON LLP, Los Angeles, California; *Counsel for Chicago Pacific Founders Fund, L.P., CPF P3 Splitter, LLC, Greg Kazarian, Larry Leisure, Mary Tolan, and Sameer Mathur*.

Elena C. Norman, Paul J. Loughman, Lakshmi A. Muthu, Alberto E. Chávez, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware; *Counsel for Sherif W. Abdou, Amir Bacchus, Gary Garrett, Lorie Glisson, Taylor Leavitt, and Tom Price*.

**LASTER, V.C.**

Hudson Vegas Investment SPV, LLC ("Hudson") claims that it was fraudulently induced to purchase units in P3 Health Group Holdings, LLC (the "Company" or "P3"). The defendants have moved for dismissal under Rule 12(b)(6), contending that the theory fails to state a claim on which relief can be granted. This decision denies the defendants' motion.

## I.     FACTUAL BACKGROUND

The facts are drawn from the currently operative complaint and the documents it incorporates by reference. At this stage of the proceedings, the complaint's allegations are assumed to be true, and the plaintiff receives the benefit of all reasonable inferences.[1]

### A.     The Creation Of The Company

At some point in the past that the complaint does not identify, Sherif W. Abdou and Amir Bacchus co-founded the Company. Abdou served as CEO. AC ¶ 46. Bacchus served as a senior officer, but the complaint does not say what office he held. Both served on the Company's board of managers (the "Board").

The Company engaged in the business of population healthcare management. That concept involves providing administrative support to physicians and other healthcare providers so that patients receive more cost-effective healthcare. The Company's business plan involved acquiring healthcare practices to increase its own patient

---

[1] Citations in the form "AC ¶ —" refer to allegations in the complaint. Citations in the form "PX __" refer to exhibits from Hudson's previous motion for a preliminary injunction.

enrollment. Since its founding, the Company expanded its footprint to provide services in Nevada, Arizona, Florida, and Oregon.

Chicago Pacific Founders Fund, L.P. ("Chicago Pacific") is a private equity fund that provided the start-up capital for the Company and described itself as the Company's founding investor. Chicago Pacific controlled the Company through a combination of governance rights, equity ownership, and representation on the Board.

**B.    Hudson Invests In The Company.**

In November 2019, Hudson invested in the Company. Hudson is a special purpose vehicle affiliated with the Straus Group, which created Hudson to invest in the Company. The complaint does not describe the Straus Group, but it appears to be a private investment firm based in Fort Lee, New Jersey that makes investments in in hedge funds, private credit, private equity, and real estate.

Hudson contends that Abdou, Bacchus, and Chicago Pacific fraudulently induced Hudson to invest in the Company. The complaint contains the barest minimum of allegations in support of that theory.

Only two paragraphs in the complaint contain factual allegations about the circumstances surrounding Hudson's investment. The first paragraph appears in the body of the complaint and states:

> In November 2019, relying on inflated and false financials that P3 presented to Hudson, Hudson invested $50 million in P3 pursuant to a Class D Unit Purchase Agreement and, in exchange, received (i) over 16 million Class D units, becoming P3's second-largest unitholder, and (ii) a series of valuable rights in the operative LLC Agreement that existed until the De-SPAC Merger closed.

2

*Id.* ¶ 19.

The second paragraph appears in the count of the complaint that asserts the fraudulent inducement claim. It states:

> Abdou, Bacchus, and [Chicago Pacific] and its representatives that crafted and provided financial materials to Hudson falsely represented the financial status and outlook of P3 at the time that Hudson was considering investing, which is a material fact to any investment decision. In November 2019, and in furtherance of their efforts to convince Hudson to invest in P3, Abdou, Bacchus, and members of [Chicago Pacific] provided materials to Hudson regarding P3's revenue projections, EBITDA projections, available market opportunities, and expected viability and success. Those materials included materially incorrect financial information. They projected, for instance, an EBITDA north of $12.7 million for 2020, but, on receipt of P3's financials in 2021, the truth is that P3's EBITDA for 2020 was negative $40 million—a $52 million swing. At the time those materials were provided to Hudson, P3 was a closely held, relatively small LLC that should have had a precise sense of its business and financials. Indeed, those materials showed that P3 only had $14.49 million in assets and 52 full-time employees at the end of Q1 2019. A fluctuation of $52 million for a company of that size and stature is not a result of ambitious projections. Upon information and belief, Abdou, Bacchus, and the members of CPF that crafted and provided those materials to Hudson knew that they were materially false and misleading and that they were material to Hudson agreeing to invest in P3.

*Id.* ¶ 150.

Four other paragraphs contain allegations that track the elements of a claim for fraudulent inducement:

> 151. Those individuals knew that their representations were false or made with a reckless indifference to the truth.
>
> 152. Those individuals intended to induce Hudson to invest.
>
> 153. Hudson acted in justifiable reliance on the misrepresentation.
>
> 154. Hudson would not have invested had it been provided with accurate financial information, and was injured by its reliance on the misrepresentation.

*Id.* ¶¶ 151–54.

The only allegedly fraudulent statement that these paragraphs identify is the Company's projected EBITDA for 2020. The only basis for inferring falsity is the difference between the projection and the Company's actual EBITDA for 2020. The complaint attributes the representation to Abdou, Bacchus, and Chicago Pacific. The complaint does not identify particular representatives of Chicago Pacific who made the representation. It does not identify the specific time or place when the representation were made.

Although the complaint does not mention it, Hudson made its investment in the Company pursuant to a Unit Purchase Agreement dated November 4, 2019. PX 5 (the "Unit Purchase Agreement" or "UPA"). Under that agreement, Hudson paid $50 million in exchange for approximately 16 million Class D Units in the Company. The Unit Purchase Agreement contemplated a $250 million valuation of the Company, implying that Hudson acquired 20% of its equity. Dkt. 136 at 4. Hudson's investment made it the Company's second largest holder of equity after Chicago Pacific. AC ¶ 19.

## C.    This Litigation

In June 2021, Hudson filed a complaint that challenged a pending transaction unrelated to Hudson's original investment. After the transaction closed, Hudson filed the currently operative complaint. Hudson's original complaint did not contain a count asserting fraudulent inducement. Count VIII of the currently operative complaint added that claim.

## II.   LEGAL ANALYSIS

Abdou, Bacchus, and Chicago Pacific have moved to dismiss the claim for fraudulent inducement under Court of Chancery Rule 12(b)(6) as failing to state a claim on which relief can be granted. When considering a motion under Rule 12(b)(6), the court (i) accepts as true all well-pleaded factual allegations in the complaint, (ii) credits vague allegations if they give the opposing party notice of the claim, and (iii) draws all reasonable inferences in favor of the plaintiff. *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011). Dismissal is inappropriate "unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances." *Id.*

### A.   The Elements Of A Fraudulent Inducement Claim

Delaware law does not distinguish between a claim for fraudulent inducement and a claim for common law fraud. *See, e.g.*, *LVI Gp. Invs., LLC v. NCM Gp. Hldgs., LLC*, 2018 WL 1559936, at *11 (Del. Ch. Mar. 28, 2018). To state a claim for either, a complaint must plead the following elements:

1)  a false representation, usually one of fact, made by the defendant;

2)  the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

3)  an intent to induce the plaintiff to act or to refrain from acting;

4)  the plaintiff's action or inaction taken in justifiable reliance upon the representation; and

5)  damage to the plaintiff as a result of such reliance.

*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

Court of Chancery Rule 9(b) imposes a heightened pleading standard for aspects of a fraud claim. It states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally."

Particularity is relative. Just as temperature can be relatively hot or relatively cold, a statement may be more or less particularized. A defendant facing a fraud claim usually argues that the complaint's allegations are insufficiently particularized. A plaintiff usually responds that its allegations are sufficient. The legal obligation to determine pleading-stage particularity imposes a categorical criterion on a real-world continuum.

When interpreting the particularity requirement of Court of Chancery Rule 9(b), Delaware decisions have relied on both state and federal authorities.[2] A leading treatise on the Federal Rules of Civil Procedure summarizes the particularity requirement as follows:

> The innumerable federal cases on the subject of alleging fraud suggest that it is prudent for the practicing lawyer to plead all of the elements of fraud and to do so in some detail—whenever that is possible—even though some of them actually are not the "circumstances" to which Rule 9(b) applies. In point of fact, the reference to "circumstances" in the rule is to matters such as the time, place, and contents of the false representations or omissions, as

---

[2] *See, e.g.*, *Quadrant Structured Prods. Co., Ltd. v. Vertin* (*Quadrant I*), 102 A.3d 155, 198 (Del. Ch. 2014); *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 208 n.112 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007) (TABLE); *Joyce v. RCN Corp.*, 2003 WL 21517864, at *3 n.12 (Del. Ch. July 1, 2003); *State ex rel. Brady v. Publ'rs Clearing House*, 787 A.2d 111, 115 & n.13 (Del. Ch. 2001); *York Linings v. Roach*, 1999 WL 608850, at *2 & n.8 (Del. Ch. July 28, 1999).

well as the identity of the person making the misrepresentation or failing to make a complete disclosure and what that defendant obtained thereby. A formulation popular among courts analogizes the standard to "the who, what, when, where, and how: the first paragraph of any newspaper story."

5A Arthur R. Miller et al., *Federal Practice and Procedure* § 1297 (4th ed.), Westlaw (database updated Apr. 2022) (footnotes omitted). "A pleading that simply alleges the technical elements of fraud without providing such underlying supporting details will not satisfy the rule's pleading-with-particularity requirement." *Id.* The "most basic consideration" when evaluating particularity is "how much detail is necessary to give adequate notice to an adverse party and to enable that party to prepare a responsive pleading." *Id.* § 1298.

Consistent with that assessment, Delaware cases frequently exhort plaintiffs to frame their allegations using the newspaper-story format by identifying "(1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations." *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006). That standard remains the ideal. Yet Delaware law also recognizes that "[t]he test of whether an attempted pleading of fraud states sufficient 'circumstances' to satisfy Rule 9 is not scientific." *Kahn Bros. & Co., Inc. Profit Sharing Plan & Tr. v. Fischbach Corp.*, 1989 WL 109406, at *4 (Del. Ch. Sept. 19, 1989). As Chancellor Allen explained, "Generally, it may be said that an allegation of fraud is legally sufficient under Rule 9(b) if it informs defendants of the precise transactions at issue, and the fraud alleged to have occurred in those transactions, so as to place defendants on notice of the precise misconduct with

7

which they are charged." *Id.* (cleaned up). Put differently, "the plaintiff is required to allege the circumstances of the fraud with detail sufficient to apprise the defendant of the basis for the claim." *Abry*, 891 A.2d at 1050; *accord H-M Wexford LLC v. Encorp.*, 832 A.2d 129, 145 (Del. Ch. 2003). "[A] plaintiff need not allege evidentiary details." *Cont'l Ill. Nat'l Bank & Tr. Co. of Chi. v. Hunt Int'l Res. Corp.*, 1987 WL 55826, at *6 (Del. Ch. Feb. 27, 1987).

Under these standards, the complaint's allegations—though scant—clear the bar for pleading a fraud claim. At a later stage of the case, the claim may fail. But Hudson can proceed past the pleadings stage.

### 1.      The Alleged Misrepresentation

For starters, the complaint provides sufficient detail about an allegedly false misrepresentation. Hudson claims that in October 2020, Abdou, Bacchus, and Chicago Pacific provided Hudson with financial statements which projected that the Company's EBITDA for 2020 would exceed $12.7 million. Although Hudson has not framed this allegation using a newspaper-story level of particularity, the allegation is sufficiently particularized to put the defendants on notice of the transaction at issue (Hudson's investment), the specific misrepresentation that Hudson claims was false (the representation regarding EBITDA for 2020), and the precise conduct with which the defendants are charged (providing an inflated projection).

Fraudulent statements generally involve assertions of fact. The statement about the Company's full-year EBITDA for 2020 was a projection, but that does not doom it. A projection can be actionable if it is sufficiently specific and if the plaintiff pleads that the

projection was fraudulently conceived. *See Trenwick*, 906 A.2d at 209. A plaintiff thus can state a claim of fraud based on projections about a company's expected future financial performance by pleading contemporaneous facts supporting an inference that the defendants making the statements knew that the projections had no support or lacked a good faith belief in their truth. *See Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, 2020 WL 5816759, at *13 (Del. Ch. Sept. 30, 2020).

The issues of knowledge and intent are addressed below. The current question is the sufficiency of the representation. The projection identified a specific financial figure that addressed current-year EBITDA. The statement did not involve puffery about the business, nor was it a projection about the firm's performance stretching across multiple years into the future. *Compare Edinburgh Hldgs., Inc. v. Educ. Affiliates, Inc.* 2018 WL 2727542, at *12 (Del. Ch. June 6, 2018) (rejecting a claim of fraud based on alleged misrepresentations concerning the future profitability of an acquired business where "[t]he revenue projections . . . concerned results [the management team] hoped the [business] could achieve in the following four years [and w]hether those revenues would, in fact, be achieved was not knowable at the time"). The statement also involved a projection of full-year EBITDA, made in October of the relevant year, which appeared in written materials that Hudson received. Hudson has identified an allegedly fraudulent statement with sufficient particularity.

## 2. Knowledge

The next issue is whether the complaint alleges specific facts sufficient to support an inference that the defendants either knew that the projection could not be achieved or

9

were recklessly indifferent as to its truth. *See Roma Landmark*, 2020 WL 5816759, at *13. Recall that knowledge can be alleged generally. Ch. Ct. R. 9(b).

The complaint alleges that in contrast to the projection that the defendants gave Hudson, the Company's actual EBITDA for 2020 was negative $40 million—a $52 million swing. Not only that, but the real figure represented a dramatic reversal from a positive projection to a large loss. Obviously a projection may not pan out, but in this case, the timing, magnitude, and surrounding circumstances support a pleading-stage inference of scienter. As the complaint explains, the swing was huge, and at the time, the Company was a closely held and relatively small LLC with only $14.49 million in assets and fifty-two full-time employees. Hudson alleges that in a company of that size, Abdou, Bacchus, and Chicago Pacific must have had a sufficient handle on its operations to enable them to make a reasonable and accurate projection of the Company's near-term future performance. Yet they missed by miles and in the opposite direction.

The fact that a projection does not come to fruition, standing alone, often will be "legally insufficient to support a fraudulent inducement claim." *See Edinburgh Hldgs.*, 2018 WL 2727542, at *12. That is because "allegations of fraud by hindsight are not enough to state a cognizable claim of misrepresentation . . . ." *Noerr v. Greenwood*, 1997 WL 419633, at *5 (Del. Ch. July 16, 1997) (internal quotations omitted). But that does not mean that a court cannot consider the failure to meet a projection when evaluating whether a plaintiff has pled facts supporting an inference that the projection was knowingly false. The fact that a business has missed a near-term projection by a large margin supports several possible inferences. Many of those inferences are innocent.

10

Perhaps the nature of the business made forecasting difficult. Perhaps an external event affected the outcome. But at least one possible inference is that the near-term projection was knowingly false. At the pleading stage, Hudson is entitled to the inference that is favorable to its claim.

### 3. Intent

The next element is intent. The complaint alleges that Abdou, Bacchus, and Chicago Pacific made the false projection for the purpose of inducing Hudson to take action. Recall that intent can be alleged generally. Ch. Ct. R. 9(b).

The complaint alleges that when the defendants made the full-year EBITDA projection, Hudson was considering a $50 million investment that would result in Hudson owning 20% of the Company and becoming its second largest unitholder after Chicago Pacific. It is reasonable to infer at the pleading stage that the Company stood to benefit from $50 million in additional capital and that Abdou, Bacchus, and Chicago Pacific wanted Hudson to commit. It is reasonable to infer that Hudson was more likely to invest in a company with sunny prospects rather than rainy ones, and more likely to invest in a company generating positive near-term EBITDA than a company operating at a loss. It is reasonable to infer at the pleading stage that the defendants provided Hudson with an intentionally inflated projection of near-term EBITDA to induce Hudson to invest.

### 4. Reasonable Reliance

The next element is reasonable reliance. "Justifiable reliance requires that the representation relied upon involve a matter which a reasonable person would consider important in determining his choice of action in the transaction in question, i.e., that the

11

matter misrepresented is material." *Edinburgh Hldgs.*, 2018 WL 2727542, at \*12 (cleaned up). A reasonable person would consider the near-term EBITDA performance of a company to be important when determining whether to invest. It is reasonable to infer that Hudson thought the management team's projection of near-term EBITDA performance was an important fact and relied on it when investing in the Company.

In response, the defendants argue that Hudson agreed in the Unit Purchase Agreement that it was not relying on any representations about the Company, including projections. "Delaware law enforces clauses that identify the specific information on which a party has relied and which foreclose reliance on other information." *Prairie Cap. III, L.P. v. Double E Hldg. Corp.*, 132 A.3d 35, 50 (citing *RAA Mgmt., LLC v. Savage Sports Hldgs., Inc.*, 45 A.3d 107, 118–19 (Del. 2012)). "If a party represents that it only relied on particular information, then that statement establishes the universe of information on which that party relied." *Id.* at 51. There are no magic words that a provision must use, but "murky integration clauses, or standard integration clauses without explicit anti-reliance representations, will not relieve a party of its oral and extra-contractual fraudulent representations." *Abry*, 891 A.2d at 1059. "To be effective, a contract 'must contain language that, when read together, can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract.'" *Prairie*, 132 A.3d at 51 (quoting *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004)). To bar a fraud claim, a disclaimer "must unambiguously 'ensure the preclusion of fraud claims for extra-contractual statements.'" *P'rs & Simons, Inc. v. Sandbox Acqs.,*

12

*LLC*, 2021 WL 3159883, at *6 (Del. Ch. July 26, 2021) (quoting *FdG Logistics LLC v. A&R Logistics Hldgs., Inc.*, 131 A.3d 842, 860 (Del. Ch. 2016), *aff'd*, 148 A.3d 1171 (Del. 2016) (TABLE)). Critically, such disclaimer "must come from the point of view of the aggrieved party (or all parties to the contract) to ensure the preclusion of fraud claims for extra-contractual statements . . . ." *FdG Logistics*, 131 A.3d at 860.

The defendants rely on the following provision in which Hudson agreed to limit the scope of the information on which it was relying:

> [Hudson] acknowledges, understands and agrees that neither the Company nor any of its Affiliates is making any representation or warranty, express or implied, of any nature whatsoever with respect to the Company, including any . . . projections, estimates or budgets delivered to or made available to [Hudson] or future revenues, future results of operations (or any component thereof), future cash flows or future financial condition (or any component thereof) of the Company or the future business and operations of the Company, except for the representations and warranties expressly set forth in Article IV. Notwithstanding the foregoing or anything else in this Agreement, claims or allegations arising from or relating to fraud or intentional misrepresentation on the part of [Hudson] shall not be subject to this Section 3.6.

UPA § 3.6 (the "No Representations Clause"). The problem with the defendants' position is the last sentence of the No Representations Clause, which does not apply to "claims or allegations arising from or relating to fraud or intentional misrepresentation." *Id.* (the "Fraud Carve Out"). In light of the Fraud Carve Out, the No Representations Clause does not foreclose Hudson from alleging that it relied on the representation regarding the Company's EBITDA.

The defendants argue that the Fraud Carve Out addresses the defendants' ability to assert claims of fraud against Hudson. That is not a reasonable reading of the provision,

13

which plainly focuses on the information that Hudson received. Assuming for the sake of argument that the defendants' reading was reasonable, then the provision would be ambiguous. It would not support a pleading-stage dismissal.

The defendants also rely on a standard integration clause found in the Unit Purchase Agreement. It states:

> This Agreement and the other Transaction Documents embody the complete agreement and understanding among the parties hereto and supersede and preempt any prior understandings, agreements or representations by or among the parties hereto, written or oral, which may have related to the subject matter hereof in any way.

*Id.* § 7.3 (the "Integration Clause"). A standard integration clause is not sufficient to bar a claim of fraudulent inducement.

Viewed individually, neither the No Representations Clause nor the Integration Clause operates to bar the fraudulent inducement claim. The provisions do not fare any better when read together. Hudson has plead reasonable reliance, and its contractual undertakings do not prevent Hudson from satisfying that element.

### 5. Causally Related Damages

The final element is damages. Hudson has alleged that it was injured by paying too much for its units, and it seeks an award of damages as a result. No more is required.

"Even when a plaintiff asserts a fraud claim, damages do not have to be pled with particularity." *Bamford v. Penfold, L.P.*, 2020 WL 967942, at *21 (Del. Ch. Feb. 28, 2020). Unless a complaint seeks special damages, damages can be pled generally. Ch. Ct. R. 9(g). A plaintiff adequately pleads damages resulting from fraud when the complaint "sufficiently puts defendants on notice of the precise way in which [defendant] may have

14

been harmed." *Carlton Invs. v. TLC Beatrice Int'l Hldgs., Inc.*, 1996 WL 189435, at *6 (Del. Ch. Apr. 16, 1996). Hudson has done that here.

The defendants argue that "Hudson pleads itself out of any possible injury" by simultaneously seeking to increase the size of its investment in Count II and seeking damages caused by Defendants' fraudulent inducement in Count VIII. Dkt. 136 at 41. That is not correct. Hudson is permitted to pursue alternative claims. *See* Ch. Ct. R. 8(a).

## B.     The No-Recourse Provision

Facing a viable claim for fraud, Abdou, Bacchus, and Chicago Pacific argue that a no-recourse provision in the Unit Purchase Agreement precludes Hudson from suing them. Dkt. 136 at 38–39. Although the plain language of the provision supports that reading, Delaware public policy will not permit parties to use a no-recourse provision to insulate themselves from fraud.

Section 7.10 is the no-recourse provision. It states:

> All claims or causes of action (whether in contract or in tort, in law or in equity) that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution or performance of this Agreement (including any representation or warranty made in or in connection with this Agreement or as an inducement to enter into this Agreement), may be made only against the Persons that are expressly identified as parties hereto.

> No person who is not a party to this Agreement, including . . . any past, present or future director, officer, employee, incorporator, member, manager, partner, equityholder, Affiliate, agent, attorney or other representative of any named party to this Agreement ("Non-Party Affiliates"), shall have any liability . . . for any obligations or liabilities arising under, in connection with or related to this Agreement or for any claim based on, in respect of, or by reason of this Agreement or its negotiation or execution, and each party hereto waives and releases all such liabilities, claims and obligations against any such Non-Party Affiliates.

> Non-Party Affiliates are expressly intended as third-party beneficiaries of this provision of this Agreement.

UPA § 7.10 (the "No-Recourse Provision") (formatting added). Hudson does not dispute that Abdou, Bacchus, and Chicago Pacific qualify as Non-Party Affiliates who fall within the scope of the No-Recourse Provision. The No-Recourse Provision thus purports to prevent Hudson from suing Abdou, Bacchus, and Chicago Pacific on any basis whatsoever, including for fraud.

This court addressed the effect of a comparable provision on a fraud claim in *Online HealthNow, Inc. v. CIP OCL Investments, LLC*, 2021 WL 3557857 (Del. Ch. Aug. 12, 2021). After surveying Delaware law regarding the ability of parties to limit their liability for fraud and analyzing the seminal decision of *Abry Partners*, Vice Chancellor Slights explained that parties could not use a no-recourse provision to insulate themselves from fraud:

> The court in *ABRY Partners* appears not to have discussed that provision directly in its decision, but its holding implicitly rejected the argument that a non-recourse provision will operate to insulate a third-party from liability when that party facilitated the target's lies. In a footnote, then-Vice Chancellor Strine explained that he thought "it both more efficient and fair only to override a contractual limitation on liability when that limitation would exonerate an actual liar or someone complicit in a lie."

*Id.* at \*14 (quoting *Abry*, 891 A.2d at 1063 n.82). Vice Chancellor Slights noted that a rule which prevented a no-recourse clause from insulating a fraudster from intentional fraud "comports with other expressions of Delaware law on the subject." *Id.* (collecting cases); *accord* Restatement (Second) of Contracts § 195 (Am. L. Inst. 1981), Westlaw

16

(database updated Oct. 2022) ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy.").

In this case, the plain language of the No-Recourse Provision seeks to insulate Non-Party Affiliates from any claim sounding in tort based on "any representation or warranty made as . . . an inducement to enter" the Unit Purchase Agreement. UPA § 7.10. As a matter of public policy, the No Recourse Provision cannot foreclose Hudson's ability to sue a Non-Party Affiliate for fraud.

### III.    CONCLUSION

Hudson has pled a viable claim for fraudulent inducement. The defendants' motion to dismiss the claim is denied.