# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MOVORA, LLC (F/K/A OSSIUM NEWCO LLC); OSSIUM BIDCO, LLC; AND VETERINARY ORTHOPEDIC IMPLANTS, LLC (F/K/A VETERINARY ORTHOPEDIC IMPLANTS, INC.), )
)
)
)
)
)
)

Plaintiffs/Counterclaim Defendants, )
)
)

v. )
)

CLAUDE GENDREAU; THE CLAUDE GENDREAU INVESTMENT TRUST U/A/D MARCH 16, 2013; PATRICK GENDREAU; BRIAN BEALE and TIMOTHY VAN HORSSEN, )
)
)
)
)
)
)
)

Defendants/Counterclaim Plaintiffs. )
)

C.A. No. N23C-05-034 MAA CCLD

Submitted: February 5, 2024
Decided: April 18, 2024

*Dr. Claude Gendreau and The Claude Gendreau Investment Trust U/A/D March 16, 2013's Motion for Judgment on the Pleadings:*
**DENIED.**

*Defendants-Counterclaim-Plaintiffs Patrick Gendreau, Brian Beale and Timothy Van Horssen's Motion for Judgment on the Pleadings:*
**DENIED.**

## MEMORANDUM OPINION

1

R. Judson Scaggs, Jr., Esquire, and Grant E. Michl, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware, and Kevin M. Downey, Esquire, R. Kennon Poteat III, Esquire, (Argued), Anna K. Tsiotsias, Esquire, and Ilana B. Frier, Esquire, of WILLIAMS & CONNOLLY, LLP, Washington, DC, Attorneys for Plaintiffs/ Counterclaim Defendants.

David E. Ross, Esquire, (Argued) and S. Reiko Rogozen, Esquire, of ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware, and Andrew W. Vail, Esquire, (Argued) and Benjamin J. Bradford, Esquire, of JENNER & BLOCK LLP, Chicago, Illinois, Attorneys for Defendants/ Counterclaim Plaintiffs Dr. Claude Gendreau and The Claud Gendreau Investment Trust U/A/D March 16, 2013.

Michael L. Vild, Esquire, (Argued) and Christopher P. Simon, Esquire, of CROSS & SIMON, LLC, Wilmington, Delaware, Attorneys for Defendants/ Counterclaim Plaintiffs Patrick Gendreau, Brian Beale and Timothy Van Horssen.

**Adams, J.**

## INTRODUCTION

Plaintiffs filed this action against Defendants to obtain contractual indemnification for the costs incurred in a separate litigation. Defendants, who have consolidated themselves into two groups for briefing purposes, oppose Plaintiffs' demand. Both sets of Defendants have moved for judgment on the pleadings, arguing that the unambiguous language of the at-issue purchase agreement, as well as a common-law prohibition on indemnification for one's own wrongful acts, belie Plaintiffs' claim to indemnity. This is the Court's decision on those motions. For the reasons stated herein, both motions are DENIED.

## FACTS[1]

### I.    The Parties

Plaintiffs are Movora LLC f/k/a Ossium NewCo, LLC ("Movora"), Ossium BidCo, LLC ("Ossium BidCo"), and Veterinary Orthopedic Implants, LLC ("VOI").[2] Ossium BidCo owns Movora, and Movora owns VOI.[3] Movora was the buyer in the relevant transaction, and VOI was the target company.[4]

---

[1] The following facts are derived from the well-pled allegations in the pleadings. They are taken as true solely for purposes of this opinion.
[2] Compl. ¶¶ 8-10 (D.I. 1).
[3] *Id.*
[4] *Id.* ¶ 2.

Defendant Claude Gendreau ("Claude")[5] founded VOI and was among the sellers in the relevant transaction.[6]  Claude is also the trustee of Defendant The Claude Gendreau Investment Trust u/a/d March 16, 2013 (the "Trust" and, together with Claude, the "Claude Defendants").[7]  Like its namesake, the Trust was also a seller in the sale of VOI.[8]

Patrick Gendreau ("Patrick"),[9] Claude's nephew, served as the Chief Executive Officer of VOI at the relevant times.[10]  Patrick was a seller in the transaction and serves as "Sellers' Representative."[11]  Defendants Brian Beale ("Beale") and Timothy Van Horssen ("Van Horssen" and, together with Patrick and Beale, the "Patrick Defendants") are the remaining sellers of VOI.[12]

---

[5]  Because Defendants Claude Gendreau and Patrick Gendreau share a surname, this opinion will refer to them by their first names for the sake of clarity.  The Court intends no disrespect or familiarity in doing so.

[6]  *Id.* ¶ 11.

[7]  *Id.*

[8]  Compl, Ex. 1 (hereinafter "MIPA") at 1.

[9]  *See supra* note 5.

[10]  Compl. ¶ 12.

[11]  *Id.*

[12]  *Id.* ¶¶ 13–14.  After oral argument on this motion, the parties filed a Stipulation and [Proposed] Order of Dismissal Between Plaintiffs and Defendant Brian Beale.  (D.I. 128).  The Court granted this stipulation on March 25, 2024.  (D.I. 130).

## II. VOI and The DePuy Litigation

VOI is a company that sells medical implant hardware for domestic animals.[13] Claude founded VOI in 1992 and eventually handed control of the company to his nephew, Patrick.[14] Some of VOI's products are used in tibial plateau leveling osteotomy ("TPLO") procedures, which are "essentially a method for repairing the canine equivalent of an ACL tear."[15] VOI is not alone in that market.

DePuy Synthes Products, Inc. and DePuy Synthes Sales, Inc. (together, "DePuy") make similar veterinary hardware—too similar, according to DePuy.[16] Prior to the at-issue sale, DePuy sued VOI, alleging that certain of VOI's TPLO products infringed upon a DePuy patent (the "DePuy Litigation").[17] During trial, DePuy presented the jury with damaging evidence, including a set of smoking-gun emails Patrick sent in 2016 and 2017[18] One of those emails, for example, described one of VOI's TPLO products as "100% Synthes identical."[19] Patrick's testimony at trial was no more helpful, with him offering conflicting statements and admitting to "knock[ing] off Synthes' products."[20] Ultimately, a jury agreed with DePuy and

---

[13] Compl. ¶ 16.
[14] *Id.*
[15] *Id.*
[16] *Id.* ¶ 17.
[17] *Id.*
[18] *Id.* ¶¶ 27–34.
[19] *Id.* ¶ 29.
[20] *Id.* ¶ 32.

found that VOI willfully infringed upon DePuy's patent.[21] Following the jury's verdict, VOI settled with DePuy for $70 million.[22]

## III. The Purchase Agreement

Movora and Ossium BidCo chose to purchase VOI during the early stages of the DePuy Litigation—*i.e.*, before the trial or the public disclosure of Patrick's inculpatory statements.[23] The terms of the purchase are recorded in the parties' Membership Interest Purchase and Exchange Agreement (the "MIPA"), entered into on May 5, 2020.[24] Plaintiffs insist that the MIPA placed all risk of an adverse judgment in the DePuy Litigation on Defendants.[25] In support of this position, Plaintiffs cite a string of interconnected provisions in the MIPA.

Plaintiffs primarily cite MIPA Section 8.2(a), which states in pertinent part:

> [F]rom and after the Closing . . . the Sellers shall severally (in proportion to their Percentage Interests) but not jointly indemnify, defend and hold harmless the Buyer, its Affiliates (including the Parent and the Company) . . . from and against any and all Damages arising out of or relating to . . . any Damages suffered by the Company as a result of, or in connection with, the Patent Litigation[.][26]

---

[21] *Id.*

[22] *Id.* ¶ 37.

[23] *Id.* ¶¶ 17, 30.

[24] *See* MIPA at Recitals. The parties entered into an amended agreement on June 11, 2020, which is now the governing document.

[25] Compl. ¶ 18.

[26] MIPA § 8.2(a).

The "Patent Litigation," in turn, is defined as the DePuy Litigation "together with any appeals therefrom and any related or derivative Actions."[27] The MIPA defines "Damages" to mean:

> [A]ny losses, liabilities, damages, awards, deficiencies, fines, fees, penalties, charges, Taxes, assessments, payments (including amounts paid in settlement), costs and expenses, (including costs of investigation, preparation and defense, and the fees and disbursements of counsel), whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, together with interest with respect to any of the foregoing[.][28]

Despite that broad language, Defendants' indemnity obligations were not entirely limitless. Specifically, MIPA Section 8.3(a)—the focus of the present dispute—provides in pertinent part:

> No Party shall have any indemnification obligation under this Agreement to the extent the aggregate amount of indemnifiable Damages would exceed the aggregate consideration paid by the Buyer for the Units; provided, that the foregoing limitation shall not apply to any claim for indemnification based on fraud, intentional misrepresentation, a knowing and willful breach of covenant or the expenses of the Indemnified Party in enforcing its rights under this Article 8, nor shall indemnification payments in respect thereof count toward such limitation.[29]

MIPA Section 5.5(b) gave "Sellers' Representative"—*i.e.*, Patrick—control over the DePuy Litigation following closing, subject to certain requirements to consult with Movora.

---

[27] *Id.* § 1.
[28] *Id.*
[29] *Id.* § 8.3(a).

## PROCEDURAL HISTORY

Plaintiffs initiated this litigation with their Complaint on May 4, 2023.[30] The Patrick Defendants and the Claude Defendants filed their Answers and Counterclaims on July 12 and 13, 2023, respectively.[31] Plaintiffs responded to both sets of Counterclaims on August 2, 2023.[32] The Claude Defendants then filed the present Motion for Judgment on the Pleadings on October 20, 2023.[33] On November 2, 2023, the Patrick Defendants joined in that Motion and stated their own argument for judgment on the pleadings.[34] Plaintiffs filed a consolidated answering brief in response to the Defendants' Motions on December 20, 2023.[35] The two groups of Defendants each filed their reply briefs on January 19, 2024.[36] The Court heard oral argument regarding the Motions on February 5, 2024.[37]

## STANDARD OF REVIEW

Superior Court Civil Rule 12(c) permits a party to move for judgment on the pleadings.[38] The party opposing such a motion is afforded the same benefits as a

---

[30] Compl.

[31] Patrick Defs.' Ans. & Countercl. (hereinafter "Patrick Defs.' Ans.") (D.I. 28); Claude Defs.' Ans. & Countercl. (hereinafter "Claude Defs.' Ans.") (D.I. 31).

[32] Pls.' Ans. to Claude Defs.' Countercl. (D.I. 39); Pls.' Ans. to Patrick Defs.' Countercl. (D.I. 40).

[33] Claude Defs.' Mot. for J. on the Pleadings (hereinafter "Claude Defs.' Mot.") (D.I. 76).

[34] Patrick Defs.' Mot. for J. on the Pleadings (hereinafter "Patrick Defs.' Mot.") (D.I. 80).

[35] Pls.' Opp'n to Defs.' Mots. for J. on the Pleadings (hereinafter "Pls.' Opp'n") (D.I. 93).

[36] Patrick Defs.' Reply Br. (hereinafter "Patrick Defs.' Reply") (D.I. 96); Claude Defs.' Reply Br. (hereinafter "Claude Defs.' Reply") (D.I. 97).

[37] Judicial Action Form (D.I. 102).

[38] Del. Super. Ct. Civ. R. 12(c).

plaintiff opposing a Rule 12(b)(6) motion.[39]  That is, "the Court accepts the truth of all well-pleaded facts alleged in the pleadings and draws all reasonable factual inferences in favor of the non-moving party."[40]  The Court will only grant a Rule 12(c) motion if there are no material disputes of fact and the moving party is entitled to judgment as a matter of law.[41]  The interpretation of unambiguous contracts, which inherently involves legal as opposed to factual disputes, is well-suited for a Rule 12(c) motion.[42]  In that context, the movant's burden is to establish that its interpretation is the only reasonable interpretation of the disputed contract.[43]

## ANALYSIS

### I.  Plaintiffs' Interpretation of MIPA § 8.3(a) is Reasonable.

A contract is ambiguous where there is more than one reasonable interpretation thereof.[44]  Ambiguity creates a factual dispute that precludes judgment on the pleadings.[45]  Thus, as a prerequisite to judgment on the pleadings, Defendants

---

[39] *Johnson Revocable Living Tr. v. Davies US, LLC*, 2022 WL 17347775, at *3 (Del. Super. Nov. 18, 2022) (citing *McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000)).

[40] *Graphic Packaging Int'l, LLC v. Everest Nat'l Ins. Co.*, 2023 WL 3301239, at *5 (Del. Super. May 8, 2023) (citing *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993)).

[41] *Id.* (citing *V&M Aerospace LLC v. V&M Co.*, 2019 WL 3238920, at *3 (Del. Super. July 18, 2019)).

[42] *Id.* (quoting *Lillis v. AT&T Corp.*, 904 A.2d 325, 329–30 (Del. Ch. 2006)).

[43] *Johnson Revocable Tr.*, 2022 WL 17347775, at *4 (citing *Cooper Tire & Rubber Co. v. Apollo (Mauritius) Hldgs. Pvt. Ltd.*, 2013 WL 5787958, at *4 (Del. Ch. Oct. 25, 2013)).

[44] *Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023) (quoting *Manti Hldgs., LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021)).

[45] *ITG Brands, LLC v. Reynolds Am., Inc.*, 2019 WL 4593495, at *9 (Del. Ch. Sept. 23, 2019).

must establish that Plaintiffs' interpretation of the MIPA is facially unreasonable.[46] "An interpretation is unreasonable if it 'produces an absurd result' or a result 'that no reasonable person would have accepted when entering the contract.'"[47] Defendants have not made that showing with regard to Plaintiffs' reading of the MIPA, so their Motions are denied.

## A. MIPA § 8.3(a) can Reasonably be Interpreted as a Cap.

One of Defendants' central arguments is that the third sentence in MIPA Section 8.3(a) operates as a "type of 'forfeiture' provision."[48] The relevant language provides: "No Party shall have any indemnification obligation under this Agreement to the extent the aggregate amount of indemnifiable Damages would exceed the aggregate consideration paid by the Buyer for the Units[.]"[49] As Defendants would have it, that language means that as soon as their indemnity obligation exceeds the "aggregate consideration paid"—even one dollar more—Defendants are relieved from paying any indemnity at all.[50] Plaintiffs, in contrast, argue that the relevant language simply caps the indemnity obligation at the purchase price.[51]

Plaintiffs' interpretation is reasonable. The relevant language's ability to be interpreted as a cap, as opposed to a forfeiture, is evident from the other text within

---

[46] *Johnson Revocable Tr.*, 2022 WL 17347775, at *4.
[47] *Weinberg*, 294 A.3d at 1044 (quoting *Manti Hldgs.*, 261 A.3d at 1208).
[48] Claude Defs.' Mot. at 15–19.
[49] MIPA § 8.3(a).
[50] Claude Defs.' Mot. at 16.
[51] Pls.' Opp'n at 19.

Section 8.3(a).[52] Specifically, the second sentence of Section 8.3(a) explicitly creates a defined "Cap."[53] Defendants acknowledge that the defined "Cap" is truly a cap and not a misnamed forfeiture.[54] And yet, the operative language of the second sentence of Section 8.3(a) is functionally identical to Section 8.3(a)'s third sentence. Specifically, the second sentence provides: "No Party shall have *any obligation* to indemnify pursuant to clause (i) of Section 8.2(a) or Section 8.2(b), as applicable, *to the extent* the aggregate amount of indemnifiable Damages suffered by the Buyer Indemnitees or the Seller Indemnitees, as applicable, under such clause would exceed [redacted] (the 'Cap')[.]"[55]

In other words, a provision that Defendants admit creates a cap on indemnity uses the exact phrasing that Defendants argue must create a total forfeiture. This makes Defendants' argument unconvincing. In Defendants' attempt to differentiate the two provisions, Defendants only note that the second sentence is explicitly called a "Cap" while the third sentence refers to itself as a "limitation."[56] For present purposes, the Court does not place such great weight on the labels ascribed to these closely related provisions. Instead, the Court finds that it is reasonable to read the

---

[52] *See In re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39, 56 (Del. 2019) (explaining Delaware courts "interpret contracts 'as a whole'" (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010))).

[53] MIPA § 8.3(a).

[54] Claude Defs.' Mot. at 15 ("Section 8.3(a) has a provision that addresses insurance and retention, *a cap*, and forfeiture." (emphasis added)); *see also* Claude Defs.' Reply at 19.

[55] MIPA § 8.3(a) (emphasis added).

[56] Claude Defs.' Reply at 19–20.

nearly identical language in the second and third sentences of Section 8.3(a) as producing similar results.[57] Because Defendants have not precluded Plaintiffs' interpretation of the MIPA, their Motions on this issue are denied.[58]

### B. "Aggregate Consideration Paid" can Reasonably be Interpreted to Include all Forms of Consideration.

The Patrick Defendants, in a departure from the Claude Defendants' Motion,[59] go a step further and ask the Court to define "aggregate consideration paid by the Buyer for the Units" as used in Section 8.3(a).[60] In essence, the Patrick Defendants seek to set a dollar amount on the forfeiture trigger purportedly created by Section 8.3(a). The Patrick Defendants argue that amount is $53,590,758.[61] Plaintiffs contend that the relevant amount—the cap, according to Plaintiffs—is $99,868,328.[62]

The gap between the parties' numbers comes down to the four distinct categories of consideration provided for in the MIPA. The Patrick Defendants winnow down the sum of "aggregate consideration paid" by claiming that two of

---

[57] *JJS, Ltd. v. Steelpoint CP Hldgs., LLC*, 2019 WL 5092896, at *6 (Del. Ch. Oct. 11, 2019) ("[A]bsent anything indicating contrary intent, the same phrase should be given the same meaning when it is used in different places in the same contract." (quoting *Comerica Bank v. Glob. Payments Direct, Inc.*, 2014 WL 3567610, at *11 (Del. Ch. July 21, 2014))).

[58] *Johnson Revocable Tr.*, 2022 WL 17347775, at *4.

[59] The Claude Defendants agree substantively with the Patrick Defendants on this point but chose not to move for a decision on this issue at this time. *See* Claude Defs.' Mot. at 2 n.1.

[60] Patrick Defs.' Mot. at 2–5.

[61] *Id.*

[62] Pls.' Opp'n at 30.

those four categories of consideration were not "paid" by Plaintiffs and are thus excluded from the relevant calculation.[63]

The two forms of consideration the Patrick Defendants acknowledge were "paid" are the Base Purchase Price of $30,575,894 and "the aggregate principal amount of the Remaining Seller Note," which was $23,014,864.[64] The first disputed form of consideration is the "Contingent Closing Note."[65] The Contingent Closing Note provided that Plaintiffs owed Defendants a principal sum of $20,000,000, which would be reduced by the Defendants' indemnity obligations.[66] Since the indemnity obligations are still unresolved, Plaintiffs have not transferred any funds pursuant to the Contingent Closing Note. According to the Patrick Defendants, that means Plaintiffs have not "paid" any of the contemplated $20,000,000.[67]

The next disputed category of consideration is the "Buyer Units," which were exchanged for the "Rollover Units."[68] The Rollover Units constituted a 26.3% interest in VOI and, for those units, Movora did not pay cash but instead gave Defendants an interest in Movora worth $26,277,570.[69] According to the Patrick

---

[63] Patrick Defs.' Mot. at 3–4.
[64] *Id.* at 3.
[65] *Id.*
[66] MIPA, Ex. 2 at Recitals.
[67] Patrick Defs.' Mot. at 3.
[68] *Id.* at 3–4.
[69] MIPA at Recitals; *id.* § 2.3(a)(ii).

Defendants, that transfer was an "exchange," not a payment, so it does not count toward "aggregate consideration paid."[70]

Plaintiffs argue that the phrase "aggregate consideration paid by the Buyer for the Units" is intended to include broadly all of the forms of consideration that reflected the nearly $100 million valuation of VOI in the MIPA.[71] Plaintiffs emphasize the word "aggregate," which they contend demonstrates the parties' intent to account for all forms of consideration.[72] Plaintiffs also note that "Units" is a defined term that expressly includes both "Purchased Units"—*i.e.*, the 73.7% of VOI for which Movora paid in cash and promissory notes—and the Rollover Units.[73] Since "Units" includes the Rollover Units,[74] Plaintiffs argue that Section 8.3(a) could not have been intended to exclude the value of the Buyer Units exchanged in the Rollover transaction.

Again, Plaintiffs interpretation of Section 8.3(a) is a reasonable one. The Patrick Defendants' contrary construction rests on an exceptionally narrow definition of "paid." That narrow reading is based upon two definitions of the verb "pay" from Merriam-Webster's online dictionary that suggest money, as opposed to

---

[70] Patrick Defs.' Mot. at 3–4.
[71] Pls.' Opp'n at 30–33. The Patrick Defendants do not dispute that the "aggregate valuation for the transaction" was $99,868,328. *See* Patrick Defs.' Mot. at 4.
[72] Pls.' Opp'n at 31.
[73] *Id.* at 31–32.
[74] MIPA at Recitals.

14

other valuable assets, is inherent in the definition of "pay."[75]  The Patrick Defendants, however, fail to account for the other definitions on the same webpage. Those alternate definitions include, for example: "to make due return for services rendered or property delivered;" "to give in return for goods or service;" "to discharge indebtedness for;" "to make compensation . . . for;" and "to requite according to what is deserved."[76]  Those equally viable definitions of "paid" do not indicate that the relevant consideration must be money and, therefore, could be satisfied by the Buyer Units and Contingent Closing Note.  Similarly, the Court notes that the definition of "consideration" itself is broad and not limited to money.[77]

In sum, the phrase "aggregate consideration paid by the Buyer for the Units" can reasonably be interpreted to include all of the value conferred by Movora in exchange for the ownership of VOI.  The use of the word "paid" does not necessarily limit that phrase to the forms of consideration that involved a transfer of money.  For that reason, the Patrick Defendants' Motion is denied.

---

[75] Patrick Defs.' Reply at 5–6 ("pay: to make a disposal or transfer of (money); to give (as money) in return for services received or for something bought." (quoting *Pay*, Merriam-Webster, https://www.merriam-webster.com/dictionary/pay (last visited January 3, 2024))).  The Court notes that the latter definition is derived from the "Kids Definition" portion of the webpage and is nearly identical to a standard definition that does not reference money. *See Pay*, Merriam-Webster, https://www.merriam-webster.com/dictionary/pay (last visited April 18, 2024) ("to give in return for goods or service").

[76] *Pay*, Merriam-Webster, *supra* note 75.

[77] *See Consideration*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Something (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee; that which motivates a person to do something, esp. to engage in a legal act.").

15

## II. Adjudicating "Part (c)" of Counterclaim Count VI would be Procedurally Improper.

Separately from their arguments pertaining to MIPA Section 8.3(a), Defendants pursue an alternate theory to limit Plaintiffs' recovery. That is, Defendants claim that after Plaintiffs took over VOI, Plaintiffs themselves expanded upon the infringing conduct and drove up the settlement price in the DePuy Litigation.[78] Defendants allege that VOI's new owners expanded upon the infringing conduct This infringing conduct caused DePuy to add Plaintiffs' parent entity, Fidelio Capital AB ("Fidelio"), as a defendant in the DePuy Litigation and bring additional claims of infringement.[79] Indeed, the jury in the DePuy Litigation concluded that Fidelio, along with VOI, willfully infringed upon DePuy's patents.[80]

Based on those facts, Defendants seek, in part, a declaration that: "Sellers do not have any indemnification obligation pursuant to the Agreement as to liability attributable to Fidelio's willful patent infringement or causing VOI's willful patent infringement or liability attributable to any post-Closing [sic] taken by Buyers or Fidelio."[81] Defendants contend they are entitled to judgment on the pleadings with regard to that individual declaration.[82] Defendants' request is premature.

---

[78] Claude Defs.' Ans. ¶¶ 72–76, 101–09.
[79] *Id.* ¶¶ 72–73.
[80] *Id.* ¶ 92.
[81] *Id.* ¶ 167(c); Patrick Defs.' Ans. ¶ 177(d).
[82] Claude Defs.' Mot. at 12–15.

Putting aside this Court's general reluctance to adjudicate sub-claims within an individual count,[83] Defendants' instant request, at its core, seeks an advisory opinion.[84] Courts will not issue a declaratory judgment where "the court 'would be forced to construct hypothetical factual situations on which [it] could then rule.'"[85] Here, whether and to what extent the $70 million settlement in the DePuy Litigation is attributable to post-closing willful misconduct by Plaintiffs and Fidelio is a disputed factual question.[86] Thus, ruling on "part (c)" of Counterclaim Count VI at this time would not settle any concrete controversy between the parties but would, instead, be a generic assessment of Delaware law untethered to specific facts.[87] The Court will not engage in that potentially academic endeavor.[88]

For the avoidance of doubt, the Court does not mean to suggest that Counterclaim Count VI is entirely unripe or otherwise non-justiciable. Rather, it is only Defendants' present attempt to have the Court issue a statement of law while the operative facts are in flux that is premature. If and when there is greater clarity

---

[83] *See, e.g.*, *ET Aggregator, LLC v. PFJE AssetCo Hldgs. LLC*, 2023 WL 8535181, at *7 (Del. Super. Dec. 8, 2023).

[84] *See In re COVID-Related Restrictions on Religious Servs.*, 302 A.3d 464, 493–95 (Del. Super. 2023) (discussing justiciability requirements under the Declaratory Judgment Act).

[85] *Id.* at 494 (alteration in original) (quoting *Playtex Fam. Prods. Inc. v. St. Paul Surplus Lines Ins. Co.*, 564 A.2d 681, 688 (Del. Super. 1989)).

[86] *See* Pls.' Ans. to Claude Defs.' Countercl. ¶¶ 15, 72, 75–76, 91–92, 94, 101, 109.

[87] *See* Claude Defs.' Mot. at 15 ("Plaintiffs dispute *this point of law* . . . and accordingly the Court should resolve that dispute." (emphasis added)).

[88] *See* 10 *Del. C.* § 6506 ("The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, will not terminate the uncertainty or controversy giving rise to the proceeding.").

17

about the extent to which the DePuy Litigation settlement is attributable to willful post-closing conduct by the Plaintiffs or Fidelio, the Court will be better positioned to determine how that may affect Plaintiffs' indemnity rights. Until that time, the Court will not opine on abstract principles of an entity's ability to be indemnified for its own—or its affiliate's—alleged wrongful conduct.

## CONCLUSION

In conclusion, Defendants' Motions for Judgment on the Pleadings are DENIED.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**